RILEY E. HASKELL, APPELLEE, V. HENRY B. READ ET AL., APPELLANTS.*

FILED MARCH 4, 1903. No. 12,430.

1. **Written Contract:** EXTRINSIC EVIDENCE. Where a written contract requires extrinsic evidence to explain its terms, the interpretation to be given in view of such evidence is a question of fact.

2. **Right to Vote Pledged Shares of Stock.** As a general rule, the

* Motions for rehearing denied. See opinion, page 115, *post.*

right to vote pledged shares of stock remains in the pledgor until foreclosure.

3. **Corporation:** Registered Stockholders: Election: Books of Corporation. The officers of the corporation, in conducting an election, will not look behind the books of the corporation which show who are registered as stockholders; but a court of equity may do so, and may enjoin a pledgee from voting the shares pledged in prejudice of the rights of the pledgor.

4. **Excessive Issue of Stock:** No Consideration: Injunction: Cancelation. A stockholder may maintain a suit to enjoin the holder of shares issued in excess of the amount authorized by the articles of incorporation, and without consideration, from voting such shares in prejudice of his rights, and to procure cancelation thereof.

5. **Estoppel.** Whatever might be the rule as to a bona fide purchaser of or subscriber for such an overissue of shares, one who procures the overissue without consideration, by false representations, will not be heard to assert that a stockholder who voted therefor, relying on such representations, is estopped to question the validity of the shares.

6. **Private Corporation:** Stockholder: Officers: Validity of Election: Equity. It seems that in this state a stockholder may maintain a suit in equity to try the validity of an election of officers and directors of a private corporation, and determine whether persons claiming to be such are entitled to act in that capacity.

7. **Validity of Election:** Jurisdiction of Court. In any event the court may inquire into the validity of the election and pass upon the title to corporate officers when necessary to do complete justice in a suit of which it has jurisdiction on other grounds.

8. ———: Majority of Shares. Where a corporation has a fixed capital stock, divided into a definite number of shares, a majority of all the shares is necessary to a valid election in the absence of some rule to the contrary.

9. **Voting Shares.** It is not necessary that a stockholder shall have paid for his stock in full to enable him to vote all his shares at an election.

APPEAL from the district court for McPherson county: Hanson M. Grimes, District Judge. *Modified.*

*John H. Bower, N. P. McDonald* and *Edwin E. Squires,* for appellants.

*Hoagland, Hoagland, Wilcox & Halligan, contra.*

POUND, C.

Haskell, the plaintiff, had a ranch in McPherson county, and certain horses, cattle and farming implements thereon. Read, one of the defendants, had a certain amount of capital which he desired to make use of in the business of conducting a ranch. Accordingly, they entered into a written contract for the purpose of forming a corporation, in which they agreed to incorporate with a capital stock of $32,000, divided into 320 shares of $100 each, of which each of the parties was to subscribe for one-half. They further agreed that the plaintiff should pay for his stock by conveying his ranch property, horses, cattle and farming implements to the corporation while the defendant Read should pay for the stock by him subscribed for in cattle. Pursuant to this contract a corporation was formed, and the plaintiff and the defendant Read each subscribed for $16,000 of the capital stock. The latter became president, secretary and treasurer, while the plaintiff was vice-president, and manager of the ranch. After the company was incorporated, Read advanced some $700 to the plaintiff, secured by mortgages, under an agreement whereby the plaintiff was to "redeem" with shares of stock when issued. Afterwards two shares of stock which had been issued to plaintiff were transferred by him to Read in lieu of the mortgage. When Read turned over the cattle to the corporation in payment of his stock subscription, as provided for in the contract, he claimed to have turned over and delivered more cattle than were necessary for that purpose, and, in the belief and under the representation that he had done so, the plaintiff agreed and consented that additional stock in the amount of $2,000 should be issued in payment therefor. This was done and the shares were duly registered in the name of Read on the books of the corporation. Afterwards a dispute arose with reference to this claim

that additional cattle had been turned over, and in consequence of difficulties between the parties, this suit was brought against Read and the corporation to enjoin the former from voting the two shares of stock transferred to him under the agreement with reference to security and the twenty shares issued in payment for the alleged additional cattle, and to procure the cancelation of said twenty shares. The plaintiff averred that the annual election of the corporation was approaching and that Read was threatening and about to exclude him from all share or participation. in the corporate business, by voting said twenty-two shares at such election, and was about to fill all the offices with persons in his interest, contrary to the agreement of the parties that each should have an equal voice and share in the business and affairs of the company. He claimed further that he had turned over his ranch and other property to the corporation, relying upon such agreement, and that to deprive him of his office of manager of the ranch and deny him any share in the management of the business, would work him a great and irreparable injury. The court granted a temporary injunction, and upon final hearing found for the plaintiff upon all the issues, made such injunction permanent, and canceled said twenty shares. Before trial, but after the temporary injunction had issued, the annual election of the corporation came on, and upon the production of the order of injunction, the defendant Read, as president of the company, declared the meeting adjourned until the right to vote the shares of stock in dispute could be determined. The plaintiff, however, and one of his attorneys, to whom he had assigned ten shares of his stock, proceeded to hold an election at which they filled the several offices of the company. The validity of this election and the right of the persons chosen to hold office thereunder is challenged by Read in a cross-petition, and a decree adjudging the election invalid is prayed for. Upon this point also the trial court found adversely to said defendant, and upheld the election.

The findings of fact made by the trial court, both as to the two shares of stock and the twenty shares taken in payment for cattle, are complained of.   On each point the evidence is conflicting, and, while there are many circumstances of more or less weight which tend to confirm the contentions of appellant, we think there is sufficient to sustain the findings.   The force and weight to be given to the circumstances, as against the testimony of the parties, must be left largely to the trial court; and so long as there is sufficient testimony in support of plaintiff's contentions upon each question, and the findings are not clearly wrong, they should not be disturbed.   A more serious question arises upon the written agreement wherein it is provided that the plaintiff is to "redeem" the mortgages by shares of stock when issued.   It is contended on behalf of appellant that this agreement bound Haskell to turn over the shares of stock in payment of the debt secured by the mortgages, while the plaintiff claims that there was to be a mere substitution.   The construction of a written instrument ordinarily is a question of law.   But where a written contract requires extrinsic evidence to explain its terms, the interpretation to be given in view of such evidence is a question of fact.   *Coquillard v. Hovey,* 23 Neb. 622, 8 Am. St. Rep. 134; *Rosenthal v. Ogden,* 50 Neb. 218; *Meyer v. Shamp,* 51 Neb. 424. The meaning of the word "redeem" in this agreement, is by no means clear from the face of the instrument, and in order to determine whether the debt was to be paid by transfer of the shares of stock or there was to be a mere substitution of the shares for the mortgages, it becomes necessary to inquire into all the circumstances surrounding the transaction.   Hence the interpretation to be given to that provision becomes a question of fact, and the finding of the court, having sufficient support in the evidence, is to be accepted on appeal.

Assuming, therefore, that the two shares of stock were merely pledged, and were held by Read as pledgee and not as owner, the question arises, who was entitled to vote

such shares in the election of officers and directors? This question is settled in many states by statute. In this state, however, we have no statute, and are left for guidance to the general principles of the law of corporations. As a rule, the right to vote pledged shares of stock is held to remain in the pledgor until foreclosure. Jones, Pledges, sec. 442; 1 Thompson, Corporations, secs. 732, 733, 735. Undoubtedly, where the pledgee is registered as owner of the shares on the books of the company, its officers, in conducting an election, will not look behind the books to ascertain who are the real owners of the shares. But a court of equity may do so, and may enjoin a pledgee from voting the shares pledged in prejudice of the rights of the pledgor. *State v. Smith*, 15 Ore. 98, 14 Pac. 814, 15 Pac. 137, 386; *Brewster v. Hartley*, 37 Cal. 15, 99 Am. Dec. 237; *Vowell v. Thompson*, 3 Cranch (U. S. C. C.) 428, Fed. Cas. No. 17,023; *McHenry v. Jewett*, 26 Hun (N. Y.) 453.

With respect to the twenty shares issued for the alleged additional cattle turned over by Read, we think the decree is right. The court has found that no such cattle were in fact turned over, and that the shares were issued without consideration, and upon a misrepresentation as to the number of cattle contributed. The full amount of the capital stock provided for in the articles of incorporation had been subscribed for already, and it is apparent that it was not intended that twenty of the shares subscribed by Haskell were to be issued to Read, but that there were to be twenty shares in addition to the 320 fixed by the articles of incorporation. We are unable to see how these twenty shares can be viewed in any other light than as an overissue procured without consideration and upon false representations. A stockholder may maintain a suit to enjoin the holder of shares issued in excess of the amount authorized by the articles of incorporation, and without consideration, from voting such shares in prejudice of his rights, and to procure cancelation thereof. 2 Thompson, Corporations, sec. 1497; 2 Morawetz, Private Corpora-

tions, sec. 762. We do not think any question of estoppel arises in this case, for the reason that Read, under the findings of the court, is in no sense a bona-fide holder. If the shares had been subscribed for or purchased in good faith, without any knowledge of the circumstances by reason of which they must be considered a fraudulent over-issue, a serious question might arise by reason of the fact that Haskell participated in the issue. 2 Morawetz, Private Corporations, secs. 763, 765. But whatever might be the rule as to a bona-fide purchaser of or subscriber for such an overissue of shares, one who procures the over-issue without consideration, by false representations, clearly has no standing to assert that a stockholder who voted therefor, relying on such representations, is estopped to question the validity of the shares. He can not take advantage of his own false representations, nor claim that acts of others based thereon and done in reliance upon their truth, put him in a better position.

We think, however, the court erred with respect to the validity of the election held by Haskell and his attorney; and in our opinion the decree should be modified so as to grant the appellant relief against such election, as prayed in his cross-petition. It is held generally that a court of equity is without jurisdiction to pass upon the validity of an election of officers and directors of a private corporation, or determine whether persons claiming to be such are entitled to act in that capacity. *Kearney v. Andrews,* 10 N. J. Eq. 70; *Owen v. Whitaker,* 20 N. J. Eq. 122; *Hullman v. Honcomp,* 5 Ohio St. 237; *Hartt v. Harvey,* 32 Barb. (N. Y.) 55. But in this state, suits in equity seem to be maintainable for such purposes. *Humboldt Driving Park Ass'n v. Stevens,* 34 Neb. 528, 33 Am. St. Rep. 654; *Reynolds v. Bridenthal,* 57 Neb. 280. In any event, the court may inquire into the validity of the election and pass upon the title to corporate offices, when necessary to do complete justice in a suit of which it has jurisdiction on other grounds. *Mechanics' Nat. Bank of Newark v. H. C. Burnet Mfg. Co.,* 32 N. J. Eq. 236; *Elliott*

12

*v. Sibley*, 101 Ala., 344, 13 So. 500; *Pond v. Vermont V. R. Co.*, Fed. Cas. No. 11,364. The case at bar seems to come within the latter rule. The court had obtained jurisdiction of the controversy between these parties for other purposes, and, having done so, was under a duty of rendering such a decree as would dispose of the whole controversy and completely adjudicate the points in dispute. *Morrissey v. Broomal*, 37 Neb. 766; *Tulleys v. Keller*, 45 Neb. 220. It would be inequitable and could result only in a multiplicity of suits to require appellant to test the validity of the election in some other manner and in some other proceeding. The election was invalid. Where a corporation has a fixed capital stock, divided into a definite number of shares, a majority of all the shares is necessary to a valid election, in the absence of some rule to the contrary. This is elementary. 3 Thompson, Corporations, sec. 3868; 1 Thompson, Corporations, sec. 726. We are unable to perceive any ground upon which the plaintiff and his attorney could pretend to have held or represented more than 160 out of the 320 shares of the corporation. This is the utmost to which, on any ground, they were entitled. The articles of incorporation provide for an election by the stockholders, and, in the absence of some rule or provision for an election by a majority of those present at the meeting, a majority of all the shares was clearly required. It can make no difference whether the remaining 160 shares were fully paid for or not. It is not necessary that a stockholder shall have paid for his stock in full to enable him to vote the full number of shares at an election. *Price v. Holcomb*, 89 Ia. 123, 56 N. W. 407; *Savage v. Ball*, 17 N. J. Eq. 142. The articles of incorporation provided that ten per cent. should be paid down and the remainder upon call of the directors. There can be no question that both the plaintiff and Read had paid more than ten per cent. and, as far as any question of full payment for their respective shares is concerned, the plaintiff, under the evidence, is in no better position than his adversary.

We therefore recommend that the decree be modified by striking out the sixteenth finding of fact, to the effect that the election held by Haskell and Hoagland, his attorney, —to whom he had assigned a part of his stock—was regular and valid, substituting a finding that such election was invalid and of no force, and by adding to said decree an adjudication in accordance with such substituted finding, and that, so modified, the decree be affirmed.

BARNES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be modified by striking out the sixteenth finding of fact of the trial court, substituting therefor a finding to the effect that the pretended election held by the plaintiff and his attorney, Hoagland, was invalid and of no force, and adding to said judgment an adjudication in conformity with such substituted finding, and that as so modified the judgment be

AFFIRMED.

The following opinion on motions for rehearing was filed October 7, 1903. *Rehearing denied:*

1. **Corporation:** STOCKHOLDERS: ACTS OF MINORITY. Whether less than a majority of the shares of stock in a corporation having a fixed capital stock, divided into a definite number of shares, may hold a valid meeting and bind the corporation, in the absence of any rule upon the subject, left undecided.

2. **Minority of Shares:** SPECIAL MEETING: ELECTION OF OFFICERS. Whatever may be the rule in case of stated meetings, or those regularly called or convened, a minority of the shares, after failure of the stated meeting for election of officers, can not call a new meeting on their own authority and hold a valid election.

POUND, C.

It sometimes happens that a proposition, true enough in respect of the case in hand, is put in a general form which

not only is broader than the decision to be rendered really requires, but is open to question in point of law. We think we fell into such an error in our former opinion in this cause. We stated, citing a well known text-writer, that "where a corporation has a fixed capital stock, divided into a definite number of shares, a majority of all the shares is necessary to a valid election, in the absence of some rule to the contrary." *Haskell v. Read, ante,* p. 107. Upon further examination, we find that the authorities cited do not entirely sustain the conclusion of the learned author, and that the question is one upon which there is some conflict of opinion. It is not essential to a disposition of the case at bar to pass upon that question, and we are of opinion that it should be left open.

The circumstances out of which the controversy as to the election arises are these: After the district court had issued a temporary injunction, restraining Read from voting the twenty-two shares of stock in controversy, the annual meeting for election of officers came on. Upon production of the order of injunction, it became substantially impossible to hold an election, as the shares which could be voted were evenly divided between the contending factions, assuming that Haskell could vote the two shares he had pledged. Under these circumstances, all the stock being present, Read, as president, adjourned the meeting until the injunction proceedings could be determined. We are inclined to think that this was within his powers as presiding officer, in view of the impossibility of doing any business at the meeting. However this may be, the only proper course for those who objected was to appeal from the ruling and put the matter to a vote. *Procter Coal Co. v. Finley,* 98 Ky. 405, 33 S. W. 188. It did not authorize the plaintiff and his faction, after lapse of some time, to convene what was in effect a new meeting and hold a valid election. Whatever may be the rule in case of stated meetings, or those regularly called or convened, a minority of the shares, after failure of the stated meeting for the election of officers, can not call a new meeting on their own

authority· and hold a binding election.   To. permit this would be to concede to a minority of the shares the power to govern the corporation.   This is not a case where a majority withdraw from a meeting regularly convened and suffer the minority to conduct it.   Right or wrong, the president had adjourned the meeting in the presence of all the stockholders, and no appeal had been taken from his ruling.   The attempt of plaintiff, after some time spent in consultation, to hold the meeting with less than a majority, was to all substantial purposes a new meeting.

We therefore recommend that the motions for a rehear-. ing be denied.

BARNES and OLDHAM, CC., concur.

By the Court:  For the reasons stated in the foregoing opinion, it is ordered that the motions for a rehearing be denied.

REHEARING DENIED.