ATLAS REFINING CORPORATION, APPELLANT, V. JOSEPH
H. VAUGHAN ET AL., APPELLEES.

FILED SEPTEMBER 22, 1923. No. 22400.

1. **Parol evidence** is inadmissible to vary or contradict the unambiguous terms of a valid contract in writing.

2. **Contracts:** RESCISSION. A rescission in definite terms by mutual agreement in writing may substitute a new contract for the old.

3. ————: ————. A written agreement rescinding a sale and prescribing definite terms of rescission without reserving existing obligations, rights and remedies may prevent a recovery for damages or items of indebtedness resulting from a failure to comply with the terms of the original contract.

4. **Sales:** RESCISSION: DAMAGES. In an action to recover the amount which vendors agreed to pay vendee upon a written contract rescinding sale and reconveying the property, the contract of rescission set out in the opinion, under the circumstances narrated therein, *held* to prevent vendors from recovering on a cross-petition the amount claimed to be due them from vendee for debts created before the rescission.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed, with directions.*

*Fawcett & Mockett* and *Harry A. Reese,* for appellant.

*Burkett, Wilson, Brown & Wilson, contra.*

Heard before MORRISSEY, C. J., ROSE, ALDRICH and GOOD, JJ., BEGLEY, District Judge.

PER CURIAM.

This is an action by the Atlas Refining Corporation, plaintiff, to recover from Joseph H. Vaughan and Jacob C. Vaughan, partners, doing business as J. H. Vaughan &

Son, defendants, $13,831.68, according to the terms of a written contract rescinding a sale of oil stations at Alliance and Antioch. Defendants had owned and operated the oil stations and plaintiff had purchased them. The parties contracted in writing September 4, 1920, to rescind the sale, defendants agreeing to take back oil stations, to pay plaintiff $8,640 for improvements made by it and $5,191.68 for merchandise on hand August 30 and 31, 1920, as shown by an inventory. The claim pleaded by plaintiff consists of these two items.

Defendants admitted the execution of the contract rescinding the sale and their liability for improvements and merchandise aggregating $13,831.68, but filed a cross-petition pleading an itemized indebtedness of $25,-727.64 due from plaintiff to defendants, a credit of $17,-231.68, and demanding judgment for the difference, or $8,495.96. The indebtedness pleaded by defendants consisted of charges for equipping an additional oil station at Hemingford; for trucks used in distributing oils; for debts assumed by plaintiff; for depreciation in the value of property; for salaries and expenses of defendants, while in the employ of plaintiff, and for other enumerated items.

In an answer to the cross-petition plaintiff pleaded that all matters and differences between the parties had been adjusted and settled by the contract rescinding the sale.

The trial court admitted proof tending to show that the items of indebtedness pleaded in the cross-petition were not included in the rescission or settlement and permitted the jury to find in favor of defendants on that issue. As a result the verdict contained findings that defendants were indebted to plaintiff in the sum of $13,-831.68, that plaintiff owed defendants $22,327.64, and that the latter were entitled to recover the difference, or $8,-495.96, which, with interest, amounted to $9,105.52. To prevent a new trial defendants remitted from the verdict $3,882.50, and from a judgment in their favor for $5,223.02, plaintiff appealed.

Did the contract rescinding the sale settle the items of indebtedness pleaded in the cross-petition of defendants? This is the question presented by the appeal. The circumstances attending the rescission are material to the inquiry and involved negotiations between defendants and three· corporations. When defendants owned and operated the oil stations at Alliance and Antioch,. they entered into a contract April 23, 1919, to sell them to the Reliance Refining Corporation of Delaware, the latter agreeing to issue therefor $3,000 shares of its capital stock, to pay $26,500 in cash in instalments by November 24, 1919, and $5,191.68 by January 24, 1920, for merchandise on hand, as disclosed by an inventory. The Reliance Refining Corporation did not comply with any of the terms of its purchase. In connection with the oil stations at Alliance and Antioch another one was established at Hemingford. With the consent of defendants, plaintiff purchased the assets of the Reliance Refining Corporation and assumed the obligations of the latter under its contract to purchase from defendants their oil stations at Alliance and Antioch. In this state of affairs plaintiff and defendants entered into a contract of which the following is a copy:

"At a directors' meeting of the Atlas Refining Corporation held September 4, 1920, the sale of the J. H. Vaughan & Son oil stations was considered, and, owing to a failure on the part of the Atlas Refining Corporation in obtaining a permit to sell or issue stock of said company, said company is unable to carry out its contract with J. H. Vaughan & Son; and J. H. Vaughan & Son are desirous of rescinding said contract, and have heretofore and do hereby demand a rescission of said contract of the sale of said stations at Alliance, Antioch and Hemingford; and said J. H. Vaughan & Son hereby tender back to the Atlas Refining Corporation $30,000 of the capital stock of the Atlas Refining Corporation and return to said company, $8,640 put into said stations by the Atlas Refining Corporation; and said J. H. Vaughan &

Son also agree to pay the Atlas Refining Corporation the invoice price of all merchandise on hand on the 30th and 31st days of August, 1920; and the Atlas Refining Corporation by good and sufficient bill of sale is to convey all interest of the Atlas Refining Corporation in and to said properties.

"The Reliance Refining Corporation of Delaware claimed some right in a certain contract with J. H. Vaughan & Son for the sale and purchase of the above oil stations, but said Reliance Refining Corporation have heretofore waived and disclaimed any right in any contract with said J. H. Vaughan & Son for the reason that they were unable to carry out the conditions of the same.

"With the assent of the holders of two-thirds of all the capital stock of the corporation issued and outstanding and by authority of the board of directors now in session, the said board of directors hereby consent to the rescission of the contract between J. H. Vaughan & Son and the Atlas Refining Corporation and hereby, as a board of directors, rescind said contract, on the conditions hereinbefore set forth, by putting each party in the same plight that they were formerly in, and the board of directors by this resolution hereby authorizes the officers of the Atlas Refining Corporation and instruct them by good and sufficient bill of sale or any other instrument in writing that may be necessary to convey back all title, claim or interest that the Atlas Refining Corporation may have claim in and to the oil properties of J. H. Vaughan & Son at Alliance, Antioch and Hemingford, Nebraska, so that said J. H. Vaughan & Son shall have said properties free and clear of any claim or claims of the Atlas Refining Corporation.

"September 4, 1920.

"I hereby accept the terms and conditions of the foregoing resolution and we are accepting bill of sale under said conditions and agree to carry out the terms thereof and attach this to said resolution and make it a part thereof.

"J. H. Vaughan & Son, by J. H. Vaughan.

"J. C. Vaughan."

Does this contract defeat a recovery for the items of indebtedness enumerated and described in the cross-petition of defendants? They were stockholders and officers in both the Reliance Refining Corporation and the Atlas Refining Corporation. In the negotiations resulting in the sale of the oil stations to the former, in the obligations assumed by the latter as successor and in the contract of rescission, defendants not only acted for themselves but were at the time interested financially and officially in the corporations. In addition, they were experienced in business affairs and had been conducting oil stations for several years. There is no evidence to sustain a finding that they were induced by fraud to sign the contract of rescission or that they did not understand its terms. There is no reason to construe the circumstances or the writings in their favor.

From the date of the purchase by plaintiff until the sale was rescinded defendants managed the oil stations without making substantial profits for plaintiff, their employer. They knew plaintiff could not perform its contract of purchase after investing in the enterprise $8,640, and keeping on hand merchandise inventoried at $5,191.68. They wanted the oil stations back, and before plaintiff made any reconveyance to them they had entered into an agreement to sell the properties to the Mutual Oil Company. They met September 4, 1920, with the other officers of plaintiff to make a settlement. At that meeting the claims pleaded in the cross-petition were discussed, including salaries. Any indebtedness of plaintiff to defendants was then due. Depreciation by use of the personal property to be reconveyed had already taken place. Monthly salaries claimed by defendants had not been demanded or collected when due. Defendants, now pleading that plaintiff owed them $8,495.96 September 4, 1920, then agreed to pay plaintiff $13,831.68,

without reserving in the terms of rescission the items enumerated in their counterclaim. Knowing that plaintiff could not pay for the oil stations while operating them as owner, defendants are in the attitude of having relied on plaintiff to pay its indebtedness to them after it divested itself of property regarded as security. The counterclaim of defendants is inconsistent with their written instrument. Parol evidence is inadmissible to contradict the unambiguous terms of a valid contract in writing. A new contract was substituted for the old. The rescission did not provide for payment of damages for breach of the contract of purchase. No provision was made in writing for reserving debts or damages as liabilities of plaintiff. On the contrary, defendants agreed to accept a bill of sale, or a reconveyance, under the conditions prescribed in the contract of rescission. The conditions therein did not include payment of the items pleaded in the cross-petition. The terms of rescission clearly excluded those items. To allow them is to vary an unambiguous contract and to unsettle by parol a settlement deliberately made in writing. A written agreement rescinding a sale and prescribing definite terms of rescission without reserving existing obligations, rights and remedies may prevent a recovery for damages or items of indebtedness resulting from a failure to comply with the terms of the original contract. Plaintiff reconveyed the property purchased and otherwise complied with the terms of the rescission. Defendants accepted the bill of sale and promptly transferred the property to the Mutual Oil Company, but violated its agreement to pay plaintiff $13,831.68. For this sum, with interest from September 4, 1920, there should have been a judgment in favor of plaintiff. There was no competent evidence that the claims pleaded in the cross-petition were left open for future settlement. The cross-petition should have been dismissed. The judgment is therefore reversed and the cause remanded, with directions to enter judgment in favor of plaintiff for $13,831.68, with interest

from September 4, 1920, and to dismiss the cross-petition of defendants.

REVERSED.

