STATE, EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL, v. BANKING HOUSE OF A. CASTETTER: EMIL FOLDA, RECEIVER, APPELLANT: WILLIAM REEH, INTERVENER, APPELLEE.

FILED MARCH 16, 1929. No. 26406.

C. M. Skiles, I. D. Beynon and Swarr, May & Royce, for appellant.

Henry Mencke and M. O. Cunningham, contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, and DAY, JJ., and ELDRED and REDICK, District Judges.

REDICK, District Judge.

Claim against the Banking House of A. Castetter, insolvent, in the hands of a receiver, by William Reeh, intervener. The claim was allowed and ordered paid from the depositors' guaranty fund and the receiver appeals.

Objection to the jurisdiction of this court is made because the transcript was not filed within three months from the date of the decree. A motion for new trial was filed based upon errors occurring at the trial, and transcript was filed within three months from the date the motion was overruled. This was in ample time. *Bowers v. Raitt*, 96 Neb. 460.

The facts are as follows: On June 9, 1919, the intervener and F. H. Claridge entered into the following written agreement:

"This agreement made this 9th day of June, 1919, by and between F. H. Claridge and William Reeh, witnesseth, that F. H. Claridge has sold to William Reeh and William Reeh has bought of F. H. Claridge the following lands in Dakota county, Nebraska, to wit (describing them)." "And the said F. H. Claridge hereby acknowledges receipt of $2,000 in cash as part payment on said land, and the said Reeh hereby agrees to pay $6,500 on March 1, 1920, and assume a mortgage of $10,000 now upon said land and give a mortgage to said F. H. Claridge of $11,860 due five years after March 1, 1920, bearing 6 per cent. interest from March 1, 1920, and the above amounts being $30,360 or $165 per acre, being the purchase price of the farm; the said Claridge is to pay all taxes of 1919 and prior and pay all interest on the mortgage up to and including March 1, 1920, possession to be given to said Reeh on March 1, 1920, and the said Claridge is to give a warranty deed and to furnish an abstract showing good and merchantable title; said Claridge is to make a deed to said land at once and place same with the Banking House of A. Castetter, Blair, Nebraska, in escrow, and said Reeh is to make a mortgage as above and deposit same with the above bank."

While the contract was made in the name of Claridge, the land belonged to the bank of which he was president, and the contract is treated as though made in the name of the bank. The cash payment referred to in the contract was made by Reeh giving his personal check for $750, dated June 9, 1919, and an assignment to the bank of a note and mortgage of one Jacobson for $1,250. The check was cashed immediately and the $2,000 payment credited to the real estate account of the bank. The next day, June 10, 1919, Reeh executed and delivered to the bank his note for $6,500, due March 1, 1920, a note for $11,860 dated March 1, 1920, and due five years there-

after, and a mortgage on the land securing this second note as provided by the contract. On the same day Claridge executed a warranty deed to Reeh, which was to be delivered to the purchaser March 1, 1920, when he paid the $6,500 note, at which time the mortgage and note for $11,860 were to be delivered to Claridge. The notes, mortgage and deed were left with the bank in escrow awaiting the payment of the $6,500 note and the furnishing of an abstract by Claridge showing good, merchantable title.

Reeh was unable to pay his note March 1, 1920, and on August 10 executed a new note due March 1, 1921, for $6,100, $400 rent of the farm for 1920 being credited upon the original note. Matters remained in this situation until March 15, 1921, when the Banking House of A. Castetter was declared insolvent and a receiver appointed under the banking department of the state of Nebraska. Subsequently the receiver, without the knowledge of Reeh, filed the deed and mortgage held in escrow by the bank and brought suit against Reeh on the $6,100 note. Reeh answered that suit setting up want of consideration for the note and secured judgment against the bank, which judgment, on appeal, was affirmed by this court.

It therefore appears that the deed of the lands had never been legally delivered to Reeh and, by the judgment referred to, the note of Reeh for $6,100 was without consideration, or the consideration thereof had failed. The defense of want of consideration was based upon the failure of Claridge to furnish an abstract showing good and merchantable title to the lands covered by the contract. The situation then is that the bank retained the $2,000 cash payment on the contract and Reeh has received nothing therefor except the naked title evidenced by the record of the undelivered deed wrongfully withdrawn from escrow.

On June 14, 1926, Reeh intervened in this proceeding, setting up the facts as above outlined, and claiming that

the $2,000 cash payment was a trust fund or special deposit and praying judgment against the bank and the receiver for that amount with interest at 7 per cent., and that the same be allowed as a preferred claim and paid out of the depositors' guaranty fund. He also offered to execute and deliver to the bank any instrument necessary to release intervener's apparent interest in the land by virtue of the recording of the Claridge deed, and prayed that the contract and his note and mortgage for $11,860 be canceled.

So far as the plaintiff's rights growing out of the contract are concerned, the action is in substance one for money had and received, to recover from defendants a sum of money in their hands which in equity and good conscience belongs to intervener. The situation finds its analogy in the ordinary case of a contract for the sale of real estate where a cash payment has been made and the vendor thereafter is unable to make title. In such case the vendee is entitled to recover the consideration paid in an action for money had and received, and therefore the judgment of the district court is correct to the extent of its award against the bank.

It is claimed in the brief of appellant that the action is barred by the statute of limitations, but the statute was not pleaded and the point was not presented to the district court, is not included in the assignments of error in this court and therefore will not be considered.

The real important question involved is the correctness of the order of the district court requiring the judgment of intervener to be paid out of the depositors' guaranty fund. In this regard the claim of intervener is that, under the circumstances above set forth and the evidence, to which reference will now be made, the $2,000 constituted a "trust fund" or a "special deposit." To sustain this proposition intervener produces parol evidence, which was admitted by the trial court over objection of receiver, to the effect that, at the time the written contract was entered into between Claridge and Reeh, it was orally

agreed that the $750 check and the $1,250 note and mortgage constituting the cash payment should be placed in escrow, together with the deed of Claridge and the note and mortgage for $11,860, and held by the bank until the transaction was completed.

The receiver objected to this evidence on the ground that it was thereby sought by parol to change and vary the terms of the written contract. If this evidence was competent and sufficient to establish the facts claimed, the fund would have constituted a special deposit, entitling the intervener to preferment as claimed; if not, that portion of the judgment awarding payment out of the depositors' guaranty fund is erroneous.

The parol evidence rule is well established in this state (*Security Savings Bank v. Rhodes*, 107 Neb. 223; *Atlas Refining Corporation v. Vaughan*, 110 Neb. 753; *Davis v. Ferguson*, 111 Neb. 691; *Dawson County State Bank v. Durland*, 114 Neb. 605), and where applicable will be enforced. Its wisdom has been established for so long a period and by so many decisions that its authority is not now open to question. There are, however, numerous situations which are frequently referred to as exceptions to the rule, but more accurately are cases to which the rule is inapplicable. The final test, however, in every case is whether or not the parol evidence offered tends to contradict or vary the terms of the written contract or alter their legal effect.

If the fund in question constituted a "trust fund" or "special deposit," then the title thereto remained in the intervener, and the bank was merely his agent to hold the same in escrow until finally disposed of upon performance of the agreement. There is confessedly nothing in the wording of the contract furnishing any basis for such a conclusion, which must therefore be founded entirely upon the evidence offered. Is there anything in the wording of the contract opposing or contradicting the conclusion sought to be established? We think this question must be answered in the affirmative. In the first place,

the amount is referred to in the contract as "cash as part payment on said land." A payment, in the absence of fraud or mistake, which is not alleged, passes the title of the money to the party receiving it and the payor loses all interest in and control over it. It becomes the property of the payee, and while, under the circumstance of failure of consideration, the payor may be entitled to recover a like amount, his claim therefor is against the property of payee, and not against the particular money with which the payment is made.

And, secondly, the written contract provides specifically for the deposit in escrow of the deed and $11,860 mortgage, saying nothing of the check and mortgage constituting the cash payment, and under the familiar rule of *expressio unius est exclusio alterius* it seems perfectly clear that to permit it to be shown by parol that the check and $1,250 mortgage were to be held in escrow would be in direct contradiction of the recital of the contract that they were made as a cash payment, and operate to destroy the legal effect of those terms; and also would add, to the documents to be placed in escrow under the terms of the contract, other documents, thereby adding to and varying the writing.

The contract in question is complete on its face and purports to set forth the entire agreement of the parties. It is susceptible of complete enforcement according to its terms. In such case parol evidence is not competent to show that it is incomplete, or to alter the legal effect of the terms used. *Dawson County State Bank v. Durland,* 114 Neb. 605; *Grant v. King,* 117 Minn. 54. "A written contract complete on its face cannot be shown to be incomplete by resorting to the oral negotiations leading up to its execution." *Davis v. Ferguson,* 111 Neb. 691. Intervener argues that the placing of the papers in escrow was a condition precedent to the taking effect of the contract. If this be conceded, it avails nothing to the intervener, because the written contract provides what papers shall be placed in escrow, and does not mention as part of them

the check and $1,250 mortgage. This part of the contract is just as sacred from attack by parol evidence as any other part. However, the escrow agreement is part of the contract itself, and not a condition precedent to its taking effect.

The intervener cites a number of cases from this state which he claims justify the action of the trial court in receiving the evidence to which objection is made, but we think all of them are clearly distinguishable and do not support the contention. *Gregory v. Littlejohn,* 25 Neb. 368, where a contract was placed in the hands of a custodian until certain conditions, not mentioned in nor within the terms of the contract nor in writing, were complied with, and it was held that such conditions might be shown by parol.

*Dodd v. Kemnitz,* 74 Neb. 634, holding that it was competent to show by parol that the delivery of the contract was upon a condition precedent which had not been fulfilled. In that case the evidence was received to show that the contract was not to be in effect until approved by other members of the board of education; here the evidence is offered for the purpose of adding a term to the contract itself.

*First Nat. Bank v. Burney,* 91 Neb. 269, holding that, in an action upon a promissory note, oral evidence between the original parties may be introduced to show the purpose for which the note was executed and delivered, or to show an agreement which constituted a condition upon which the performance of the terms of the note depended. This case, however, was disapproved in *Security Savings Bank v. Rhodes,* 107 Neb. 223, 226.

*Rankin v. Northern Assurance Co.,* 98 Neb. 172, holding that, where a receipt for an insurance premium fails to state upon which of two applications it was to be applied, parol evidence was admissible for the purpose of making the application.

*National Engraving Co. v. Queen City Laundry,* 92 Neb. 402, in which the written contract showed on its face

that it did not contain the entire contract.

In *Fletcher v. Brewer*, 88 Neb. 196, where the contract was silent as to the date when the deed was to be delivered, it was held that such date could be supplied by parol evidence.

*Bell v. Wiltson*, 5 Neb. (Unof.) 486, where the instrument was incomplete upon its face and the consideration, not being stated, could be shown by parol.

Also *Mothershead v. Lewis*, 117 Okla. 167. This is evidently an erroneous citation as no question of parol evidence is involved therein.

In none of these cases was it sought to add to, vary, contradict, or to change the legal effect of the terms of the contract, except where the contract on its face was incomplete.

Intervener further cites a statement of the rule from 22 C. J. 1283, sec. 1715, that, **"where a written** instrument, executed pursuant to a prior verbal agreement or negotiation, does not express the entire agreement or understanding of the parties, the parol evidence rule does not apply." This rather general and all inclusive statement of the rule, standing by itself, would seem to justify the reception of parol evidence in *all* cases, but, when interpreted in connection with the cases cited and illustrations given under the rule, is not contrary to the views herein expressed. Furthermore, in section 1720 it is said: "The parts of the agreement proposed to be proved by parol must not be inconsistent with, or repugnant to, the intention of the parties as shown by the written instrument; for, to receive parol proof of a part not reduced to writing, which is directly repugnant to the intention of the parties as expressed in the written instrument, would contravene the rule that parol evidence cannot be received to contradict or vary the terms of a written agreement."

We conclude that the parol evidence offered was incompetent and that the claim of the intervener that the fund in question was a trust fund or a special deposit must fail.

The judgment of the district court is reversed in so far

as it orders the intervener's claim paid from the depositor's guaranty fund, and in all other respects is affirmed.

AFFIRMED IN PART, AND REVERSED IN PART.