VICTOR DANBOM, APPELLEE, V. ALFRED DANBOM ET AL.: NEBRASKA-IOWA PACKING COMPANY, APPELLANT.

273 N. W. 502

FILED MAY 26, 1937. No. 29880.

*Ritchie, Swenson & Arey* and *M. J. Flannigan,* for appellant.

*Leon & White* and *Louis E. Lipp, contra.*

Heard before Goss, C. J., Rose, Day, Paine and Carter, JJ., and Eldred and Chase, District Judges.

Eldred, District Judge.

This is a proceeding in the nature of a creditor's bill. Plaintiff, Victor Danbom, had secured three judgments in the district courts of Iowa against defendant Alfred Danbom, and instituted this proceeding in the district court for Douglas county, Nebraska, against Alfred Danbom, the judgment debtor, Ancy Danbom, his wife, and Nebraska-Iowa Packing Company to recover judgment against Alfred Danbom on the Iowa judgment, and further asking that an alleged fraudulent transfer of 384 shares of the common stock in the Nebraska-Iowa Packing Company by Alfred Danbom to Ancy Danbom, his wife, be set aside, and for the sale of said stock to satisfy the judgments of the plaintiff. Defendants Alfred Danbom and Ancy Danbom are both nonresidents of Nebraska, being residents of the state of Iowa. The Nebraska-Iowa Packing Company is a Nebraska corporation with its principal place of doing business in Omaha, Douglas county, Nebraska, and the stock of said corporation alleged to have been fraudulently transferred by Alfred Danbom to Ancy Danbom, as well as ten shares of the preferred stock of said corporation, were levied on under attachment and garnishment proceedings, as provided by sections 20-1519, 20-1520, and 20-1026, Comp. St. 1929. An answer was filed on the part of the Nebraska-Iowa Packing Company, the garnishee. The only service had upon the defendants Alfred Danbom and Ancy Danbom was by publication, and neither of these defendants appeared or answered in the case. While the Nebraska-Iowa Packing Company was made a party defendant, there is no claim made in the petition that there was any participation by that company in the alleged fraudulent transaction between the defendants Alfred Danbom and Ancy Danbom; the only allegations in the petition with reference to the Nebraska-Iowa Packing Company, defendant, are hereinafter set out.

January 16, 1936, default of defendants Danbom was entered and trial was had on pleadings and evidence, with findings generally for plaintiff, and further specifically finding that there was due plaintiff on the Iowa judgments $20,439.28; and that said amount represents balances due upon judgments for loans made to the defendant Alfred Danbom by the plaintiff, which loans were made prior to April 17, 1930, and which loans were due and payable and were in default prior to April 17, 1930; further finding that prior to April 17, 1930, Alfred Danbom was the owner of 384 shares of the common stock of Nebraska-Iowa Packing Company; and that on or about the 24th day of July, 1931, defendant Alfred Danbom became the owner of 10.35 shares of the preferred stock of the Nebraska-Iowa Packing Company of a par value of $1 a share; that on or about the 17th day of April, 1930, defendant Alfred Danbom transferred said 384 shares of the common stock of said company to his wife, Ancy Danbom, defendant herein; that said transfer was in fraud of creditors, particularly the plaintiff, and was for the purpose of hindering and delaying plaintiff in the collection of his indebtedness against Alfred Danbom; and that said transfer of stock should be set aside and held for naught; that the true and legal owner of said 384 shares of common stock is the defendant Alfred Danbom, and not the defendant Ancy Danbom. There is a further finding that the Nebraska-Iowa Packing Company is a Nebraska corporation; and that its records disclose that Alfred Danbom, prior to April 17, 1930, was the owner of said 384 shares of its common stock; and that a transfer of said stock was made on the books of the company on the 17th day of April, 1930, to defendant Ancy Danbom, wife of Alfred Danbom; and that Alfred Danbom holds in his name at this time 10.35 shares of the preferred stock in said company. There is a further finding that the defendant Nebraska-Iowa Packing Company is a party to this action only for the purpose of conforming the books of said company with the order and decree of the court; and that there is nothing

due and owing from the defendant Nebraska-Iowa Packing Company to the plaintiff; and that costs of this action should not be assessed against it.

On these findings a decree was entered that the transfer of the 384 shares of the common stock in the Nebraska-Iowa Packing Company from Alfred to Ancy Danbom be, and is, set aside and held for naught, and the ownership of said shares adjudged to be in Alfred Danbom, subject to the lien and claim of the plaintiff in the sum of $20,439.28, plus the costs of this action; and the sheriff of Douglas county is ordered to offer said 384 shares of common stock in said company and the 10.35 shares of preferred stock in said company for sale in satisfaction of plaintiff's judgment as upon execution; and the defendant Nebraska-Iowa Packing Company is directed to issue a certificate of stock for said 384 shares of common stock and 10.35 shares of preferred stock of said company to the purchaser thereof at the sheriff's sale; and that the defendant Nebraska-Iowa Packing Company, upon issue of the above stock certificates to the purchaser, at the sheriff's sale, be relieved of all liability for costs herein. No motion for new trial was filed, but from this judgment and decree the defendant Nebraska-Iowa Packing Company has appealed.

The brief of appellant assigns six "errors relied on for reversal." The first error assigned is to the ruling of the court in sustaining a motion to strike a paragraph of appellant's amended answer, where it was alleged that the transfer from Alfred Danbom to Ancy Danbom, his wife, was for a valuable consideration. The paragraph stricken was not in response to any issue tendered by the petition as against the answering defendant. The answering defendant packing company's only interest was that of a garnishee. All the allegations of the petition are personal as against the defendants Danbom, and relate only to them, with the exception of the last sentence of paragraph VII, which reads: "That the said Nebraska-Iowa Packing Co. is a Nebraska corporation with its principal place of doing business in Omaha, Douglas county, Nebraska, and

that said 384 shares of common stock in said corporation are within the jurisdiction of this court and that the court should decree that service be had upon the defendants Alfred Danbom and Ancy Danbom by attaching said shares of stock as provided by law to secure service by attachment and publication and that the court should decree that said shares of stock are the property of the said Alfred Danbom and subject to the claim of the plaintiff." And a part of the prayer reading: "That the sheriff of Douglas county be ordered and directed to sell as provided by law the said 384 shares of common stock in the Nebraska-Iowa Packing Co., a corporation, in satisfaction of said judgments." The foregoing allegations with the answer of the packing company thereto present the only questions which could be of interest to the appellant. But, it is urged by assignment of error No. 4 that appellant was entitled to traverse every allegation of plaintiff's petition; and that it could not let the case go by default without putting in a defense for the defendants Danbom, which it knew was available, without subjecting itself to a suit for conversion at the hands of the stockholders, citing *Sprague v. Allied Mills,* 129 Neb. 394, 261 N. W. 892. There is a marked distinction between that case and the case at bar. There the property was placed by the wife, claiming to be the owner, in a warehouse of a storage company as her property; later the property was seized under attachment and garnishment proceedings in which her husband was the defendant. The storage company answered as garnishee that it had property belonging to defendant, setting up the list of goods stored by the wife. The wife had no notice of the proceedings until after the sale of the goods. The garnishee made no attempt whatever to defend the garnishment or to postpone the sale until it could get notice to the wife, who stored and claimed the goods. The answer of the garnishee in that case did not correctly set up the facts disclosing for whom it was holding the property, and it made no effort to notify the wife before sale. It was not suggested in that case that

any responsibility rested upon the garnishee to defend on the merits of the case as between the principal parties to the suit. The fault was in failing to make an accurate disclosure in its answer and in failing to give the wife, who stored the goods, notice of the garnishment. Here the garnishee by its answer appears to have disclosed the true condition, as shown by its record, regarding the transfer of the stock and the issue of the new certificate, and it clearly appears that Ancy Danbom had actual notice of these proceedings. While she was served by publication, she appeared and testified as a witness, by deposition included in the bill of exceptions, taken by the packing company on the 29th day of June, 1935, covering the issues involved in this case, as between the plaintiff and said defendant Ancy Danbom. The motion to strike the paragraph referred to from the amended answer of the garnishee defendant was not filed until November 1, 1935, and was ruled on November 2, 1935, long after Ancy Danbom is shown to have had actual knowledge of these proceedings. The packing company, as garnishee, occupied a neutral position, and it was only required to deal fairly with all parties to this litigation. The pleadings do not disclose that the packing company should have had any interest in attempting to establish a defense for either of the nonanswering defendants. Under the facts in this case, it was not incumbent upon the garnishee to defend the action on the merits of the plaintiff's claim against the defendants Danbom; and the trial court did not commit error in striking the paragraph of the amended answer of the garnishee defendant referred to in the motion.

The second and third assignments of error are to rulings of the court during the progress of the trial on objections to questions propounded witnesses, and an offer of proof. No motion for a new trial was filed. In an equity case, if appellant desires a review of alleged erroneous rulings of the trial court as to the reception of evidence, it is necessary that the district court's attention must have been called to the same by a motion for a new trial. *Pitman v.*

*Henkens,* 125 Neb. 621, 251 N. W. 282; *Hall v. Bowers,* 117 Neb. 619, 225 N. W. 49; *State v. Banking House of A. Castetter,* 118 Neb. 231, 224 N. W. 21; *State v. Citizens State Bank,* 115 Neb. 271, 212 N. W. 616.

Fourth, error is assigned that the court erred in holding that the default of the defendants Alfred and Ancy Danbom, upon whom no personal service was had, was an adjudication of all issues except as to whether the records of Nebraska-Iowa Packing Company showed stock outstanding in the names of Alfred and Ancy Danbom. Counsel has not directed our attention to the place in the record where such a holding may be found, and from an examination of the record we fail to find such a holding. The bill of exceptions shows evidence offered by plaintiff in support of his petition. While the plaintiff's counsel objected to the offer of evidence by the packing company to controvert the allegations made against the defendants Danbom, the court stated: "The defendant Nebraska-Iowa Packing Company may present its evidence and I will withhold in abeyance this ruling." The evidence was received. The journal entry of the decree recites that the trial was had upon the pleadings and "upon the evidence." However, it is not material upon what the findings and decree of the trial court may have been made, if they are supported by facts disclosed by the record. A number of authorities from other jurisdictions are cited by appellant in support of the proposition that: "Where service is by publication only, the fact that the defendants enter no appearance is not sufficient admission of the allegations of the plaintiff's petition to authorize a decree in accordance therewith; but the plaintiff's cause of action must be proved before the plaintiff is entitled to a judgment." The authorities cited are not controlling on the proposition presented. Under our statute (Comp. St. 1929, sec. 20-842) and by the decisions of this court, the contention of the appellant that plaintiff was not entitled to a decree by default as against the defendants Danbom is effectually foreclosed. In *Weir v. Woodruff,* 107 Neb. 585, 186 N. W. 988, an action to quiet title,

service was had by publication; defendants defaulted, and plaintiff asked for a decree on such default in accordance with the prayer of the petition. The request was denied by the trial court. On appeal, the court held, where the defendants are in default in such action, the allegations are to be taken as true, and if the petition states a cause of action, the plaintiff is entitled to judgment without proof of the allegations of his petition, thus affirming holding in *Slater v. Skirving,* 51 Neb. 108, 70 N. W. 493. The identical question appears to have been urged in *Weir v. Woodruff, supra,* as in the instant case; it being there urged that in an equity case proof should be required as against nonresidents served constructively, who do not appear. In the opinion it is stated:

"We are urged to adopt the general equity rule laid down in 16 Cyc. 495; it being argued that the case of *Slater v. Skirving, supra,* was a law action, while this is a suit in equity. The answer to this argument is that distinctions between actions at law and suits in equity have been abolished. Rev. St. 1913, sec. 7560 (Comp. St. 1929, sec. 20-101).

"It being essential to the orderly administration of justice that the rules of procedure be fixed and stable, we adhere to the rule heretofore established and hold that it was error for the court to refuse to enter judgment in favor of plaintiffs upon their petition."

Section 20-1308, Comp. St. 1929, cited by appellant, is not controlling under the situation here presented. That section applies to situations where it is necessary to make proof in cases coming within the exceptions stated in section 20-842, Comp. St. 1929, on allegations of value and amount of damage. On default of the defendants Alfred Danbom and Ancy Danbom, the plaintiff was entitled to have the allegations of his petition, so far as they were personal to said defendants, taken as true, and to have a default judgment entered against them.

Assignments five and six will be considered together. Number five assigns error in the entry of judgment in

favor of the plaintiff; and number six that "the court erred in directing the defendant Nebraska-Iowa Packing Company to issue certificates for 384 shares of its common stock and for 10.35 shares of its preferred stock to such person as might be a purchaser at the sheriff's sale which was ordered in the decree appealed from, without requiring that the stock certificates representing said shares and now outstanding be first surrendered to this defendant company for cancelation." The last assignment presents the paramount question involved in this litigation, and stated tersely is: Had the court power to direct the packing company to issue certificates for the stock sold by the sheriff to the purchaser, without the outstanding certificates representing those shares being surrendered?

"Stock in corporations owned by the judgment debtor, or the defendant in attachment proceedings, may be levied upon under executions or writs of attachment, and the mode of levy shall be as follows." Comp. St. 1929, sec. 20-1519.

"Stock in a corporation shall be levied upon by notifying in writing the president, vice-president, secretary, cashier, or other managing agent at the usual place of business of said corporation, that the stock has been levied upon under the writ held by the officer." Comp. St. 1929, sec. 20-1520.

And section 20-1026, Comp. St. 1929, provides that the garnishee "shall appear and answer, under oath * * * and shall disclose truly * * * in case of a corporation, any stock therein held by or for the benefit of the defendant, at or after the service of notice." While the record in this court is not clear as to the procedure taken in the attachment and garnishment proceedings, it is not urged by appellant that there was any irregularity therein; but it is contended that the court was without authority to make the orders complained of by this last assignment. The packing company does not have the stock certificates evidencing the stock involved in its possession, nor is it shown that such certificates are within this state.

Section 2, art. I of the by-laws of the packing company,

provides: "Transfers of stock shall be made only upon the books of the company by the holder thereof in person, or by his attorney in fact legally authorized. Before a new certificate is issued, the old certificate properly indorsed shall be surrendered." And it is contended by the appellant that to compel it to issue a duplicate certificate of stock under such circumstances, with the other certificate outstanding, would be a violation of the right of the packing company to require its stock to be surrendered before new certificates are issued. "A certificate of stock in a corporation is not the stock itself, but rather the evidence of the holder's ownership of the stock, and of his rights as a stockholder to the extent therein specified." *Herrick v. Humphrey Hardware Co.*, 73 Neb. 809, 103 N. W. 685. See *Miller v. M. E. Smith Building Co.*, 118 Neb. 5, 223 N. W. 277. The statute, section 20-1519, *supra*, says: "Stocks in a corporation owned by * * * defendant in attachment proceedings, may be levied upon under * * * writs of attachment." Section 20-1520, *supra*, provides that the manner of levy shall be by notice to the company that levy has been made. The validity of the statutes authorizing such proceedings is recognized by this court in *Farmers & Merchants Nat. Bank v. Mosher*, 63 Neb. 130, 88 N. W. 552, in which case it is also held: "The real actual rights and interests of a stockholder, will be reached by the garnishment upon the corporation without regard to the apparent interest of the owner." There is no requirement that the certificates of stock should be seized or in any manner sequestered. While certificates of stock are subject to transfer by indorsement, they are not negotiable instruments, and the rules governing the transfer of negotiable paper do not apply. The question of good faith ownership of the stock on account of the outstanding certificate being transferred after the attachment levy is not involved. What might be the rights of one claiming as an indorsee of stock certificates before any notice of the garnishment of the corporation, although the question is raised in the brief of counsel, likewise is not an issue in this case.

The appellant further urges that, by sale under the order of the lower court which does not have possession of the certificates, the corporation would be compelled to issue duplicate certificates and run the risk of litigation, claims for conversion, and other damages. But the fear thus expressed would seem not justified. Where a garnishee has, in good faith, made a full and accurate disclosure of the facts as to the property of the debtor in its possession or under its control, and where an order is made by the court that such property of the defendant, in the possession of the garnishee, in this case the stock of the defendant corporation, be sold by the sheriff to satisfy the indebtedness of the judgment debtor, and further that the garnishee issue certificates to purchaser at sheriff's sale for the stock sold, such order is a judgment; and where the garnishee, acting pursuant to such judgment of the court, makes transfer of the stock so sold on its records, and issues new certificates, it will be protected from liability to any holders of the outstanding certificates. *Peterson v. Kingman & Co.*, 59 Neb. 667, 81 N. W. 847; *Gamble v. Dawson*, 67 Wash. 72, 120 Pac. 1060, Ann. Cas. 1913D, 501.

In opinion in *Farmers & Merchants Nat. Bank v. Mosher*, 68 Neb. 724, 100 N. W. 133, it is said: "A stockholder's interest in a corporation and in all of its property and rights is represented by his stock. There can be no question that the levy upon the stock by the garnishment of the corporation pursuant to the statute will impound the whole interest of the stockholder in the property and rights of the corporation, and that the right to receive dividends goes with the stock." Thus, plaintiff in this case, by the service of notice of the attachment and garnishment on the packing company, acquired a lien, as of the date of such service, upon all of the interest of the stockholder then in the possession or under the control of the garnishee, packing company. The by-laws do not attempt to, and could not, place the stock without the jurisdiction of the court. The object of having transfers of stock recorded

upon the books of the company is to give the company notice of whom the stockholders are. *Herrick v. Humphrey Hardware Co., supra.* And while, ordinarily, the officers of the corporation will not look beyond the records to ascertain who are the real owners of the stock, a court of equity may do so. *Haskell v. Read,* 68 Neb. 107, 93 N. W. 997.

"It cannot be successfully contended but that the assignee of the shares of stock of a corporation is entitled to maintain an action in equity to require an obstinate corporation to enter his assignment upon the books of the corporation and issue to him a new certificate representing the same." *Everitt v. Farmers & Merchants Bank,* 82 Neb. 191, 117 N. W. 401.

In *Ball v. Towle Mfg. Co.,* 67 Ohio St. 306, 65 N. E. 1015, 93 Am. St. Rep. 682, the facts were quite analogous to the case at bar. The certificates of stock in that case were not in the possession or under the direct control of the corporation. The court states:

"There is a marked and obvious distinction between the stock of a corporation and the certificate representing such stock. The certificate of shares of stock in a corporation is not the stock itself, but is a mere evidence of the stockholder's interest in the corporate property of the corporation which issues said certificate. Cook on Stock and Stockholders, section 485. In the absence of statutory or charter requirements no certificate of stock is necessary to attest the rights of the shareholder in the corporation, and such certificate when issued to the owner of shares of stock is merely an evidence or acknowledgment of the owner's interest in the property of the corporation, but is not the property itself. In law a corporation is the trustee of the corporate property and holds the same for the benefit of the stockholders; and so long as such corporation continues to have a legal existence and to carry on the business for which it was created it alone is the proper custodian, and has possession of the corporate property. In Cook on Stock and Stockholders, section 480, the author says: 'It has been held that if a stockholder whose stock has already

been attached or sold on execution sells his certificate of stock after the levy of such attachment or execution, the vendee or transferee buys subject to such levy, even though he had no knowledge of it. The stock in contemplation of law has already been seized by the levy, and the purchaser is bound to take notice of that fact.' * * * While the certificate for said ten shares of stock was, at the time of the commencement of the proceedings in aid of execution by the Towle Manufacturing Co., and at the time of the service of notice on the bank, in the hands of Webb C. Ball, the judgment debtor, yet the actual property, the stock itself, which such certificate represented, was then in the possession of the bank, and being in the possession of the bank, by force of the provisions of section 5475, such property was bound from the time the notice was served on said bank, and by the service of said notice the Towle Manufacturing Co. acquired a valid lien thereon which it may enforce by a judicial sale of said stock." See 7 R. C. L. 197, sec. 167; 14 C. J. 719; *Young v. South Tredegar Iron Co.*, 85 Tenn. 189, 2 S. W. 202, 4 Am. St. Rep. 752.

It is not essential to the validity of the execution sale of shares of stock in a corporation that the sheriff have manual possession of the certificate at the time of the sale, or that he should deliver it to the purchaser. *West Coast Safety Faucet Co. v. Wulff*, 133 Cal. 315, 65 Pac. 622; 85 Am. St. Rep. 171.

The plaintiff having by the attachment and garnishment proceedings acquired a lien on all stock of the Nebraska-Iowa Packing Company involved in this case, and such stock having been impounded by those proceedings, it was the duty of the court, on entering judgment and decree herein against the principal defendants Danbom, to make a decree for the enforcement of such lien by the sale of such stock as upon execution, to satisfy the plaintiff's judgment. Where by-laws of the corporation provide that transfers of stock shall be made upon the books of the company, and for the issuance of a new certificate, and that the old certificates shall be surrendered, the duty of

entering a transfer of said stock on the company's books and issuing a new certificate is just as imperative where the stock is sold through judicial process as where sold by the stockholder direct. The court, upon making an order for the sale of stock in this case, had jurisdiction to require such action on the part of the garnishee as was necessary to make a sale by the sheriff under such order effective, by entering the transfer on the books of the company and issuing new certificates, though the old certificates were not surrendered.

Finding no prejudicial error in the proceedings of the trial court, the judgment is

AFFIRMED.