Nicholson, C. J.,
delivered the opinion of the Court.
This was an application by Albert Pike before a Circuit Judge, in the first Circuit Court of Shelby county, for the writ of mandamus, to compel the Memphis Appeal Publishing Company to transfer to • him on its books the stock formerly owned by J. M. Keating. The petition states that a judgment was rendered 'against Keating in the Supreme Court on the 2nd of June, 1870, in favor of the petitioner, on which execution was issued, tested of the 1st day of the-April Term, 1870, of that Court; that the execution was levied by the Sheriff of Shelby county, on the 27th of July, 1870, “in due form of law upon the stock held and owned by the said J. M. Keating in *699 the Memphis Appeal Publishing Company, together with all interest that said Keating had in said Company.” The petition further states, that after advertizing according to law, the Sheriff, on the 15th of August, 1870, sold the said stock and interest, when j>etitioner became the purchaser, and having paid the amount bid, the Sheriff executed to him a certificate of purchase. That on the 30th of August, 1870, he-applied to F. A. Tyler, the Secretary of the said Publishing Company, and demanded a transfer to him of the stock of said Keating; that Tyler refused to transfer said stock; and informed petitioner that said Keating-had had no stock in said Company since the 6th of June, 1870, on which day he transferred his stock to Toof,. Phillips & Co. Petitioner alleges that the transfer of said stock on the 6th of June, 1870, by Keating to Toof, Phillips & Co., was without force and effect, the same having been made subsequent to the judgment in the-Supreme Court, to-wit: on the 2d of June, 1870, on-which day the execution issued thereon, bearing teste-of the first Monday of April, 1870.
An alternative writ of mandamus issued on the petition, which was served on F. A. Tyler, the Secretary of the Company.
Defendant appeared by counsel and moved to quash-the writ and petition; which motion being overruled, defendant was required to put in an answer or return to the writ within two days. Upon the failure of defendant to make answer or return, the Court ordered a 'peremptory mandamus to issue. Thereupon defendant-moved the Court to set aside the order for a peremp *700 tory writ, and to be allowed* to file an answer, which was tendered, along with the affidavit on which the motion was based. Upon the disallowance of the motion, the defendant appealed to this Court.
Upon examination of the affidavit filed on the motion to set aside the order for a peremptory writ, we think it furnished such an excuse for having failed to answer and make return to the alternative writ within the two days, allowed, as should have induced the Court to set it aside and receive the return and answer tendered, provided upon inspection of the answer it was sufficient to show that a peremptory writ should not be ordered. It is necessary, therefore, to examine the answer to determine whether the Court erred in refusing to allow the motion to set aside the order for a peremptory writ.
The first response of Tyler, the Secretary of the Company, assigns as a reason for his refusal to transfer Keating’s stock to Pike, that Keating had assigned his stock in the Company to Toof, Philips & Co. before the purchase of it at the Sheriff’s sale by Pike, and that he was warned by Keating and his assignees, 'Toof, Philips & Co., to take no action in the premises that would give Pike any advantage, and being of opinion, upon inquiry, that Pike obtained no valid title by his purchase, he therefore refused to make the transfer.
If Pike obtained a good title to Keating’s stock in the Corporation, by his purchase at the Sheriff’s sale, he was thereby vested with a franchise in said Corporation and had the right to its use and enjoyment. *701 It was not necessary that a transfer of Keating’s stock should be made on the books of the Company to complete Pike’s title. If the sale by the Sheriff was-valid, Keating was divested of his title whenever the-sale was completed, and at the same instant Pike became vested with the title. But to enable Pike to exercise the franchise secured by his purchase, in accordance with the provisions of the act of incorporation and the by-laws, it was necessary that his name-should appear on the books of the Company as the-ownér of the stock. Upon the assumption, therefore,, that his purchase was valid, Pike had the right to require Tyler, as the Secretary of the Company, to recognize his right as a stockholder, by transferring to-his name the stock that had stood on the books in the name of Keating. Nor was it any legal excuse for refusing to do so, that Keating had already assigned his stock to Toof, Philips & Co., if that assignment was made after Pike had obtained a judgment against Keating, the execution on which operated' as a lien on the stock from a date anterior to the-date of Keating’s assignment to Toof, Philips & Co. These elementary principles are too familiar to require the citation of authorities for their support.
It is not denied that Pike obtained his judgment against Keating in the Supreme Court on the 2nd of June, 1870, and that execution issued thereon bearing teste of the 1st Monday of April, 1870. It is also not disputed that Keating’s assignment to Toof, Philips & Co. was made on the 6th of June, 1870. The validity of Pike’s title, therefore, depends upon the- *702 two questions: — first, Was the stock a proper subject of a levy and sale under execution? and second, Was the levy made sufficient to pass the title? It is not necessary to remark, that if the stock was subject to levy and sale under execution, it was because it had been made so by Sec. 1487 of the Code, as follows:
Sec. 1487. “The stock in all private corporations ■formed under this chapter,” (which treats of private ■corporations), “or heretofore created, or to be hereafter ■created by special law, are personal property and subject to levy and sale as such: the Company in such case being required to make the proper entries in its stock or transfer book; — but such sale will not relieve a stockholder from liabilities which had attached to him as such previous to the sale, neither will a voluntary sale.”
This section is found under article 4, of chapter 2, which treats of “Private Corporations,” and in this ■chapter corporations .for Turnpike, Graded, Rail, or Plank, Roads are embraced — all being classed as “Private Corporations.” Art. 4 of this chapter contains “general provisions in relation to Private Corporations,” of which sec. 1487, just quoted, declares the stock in such corporations to be personal property, and subject to levy and sale as personal property.
Again: By sec. 3034, “ the stock in all the turnpikes and railroads chartered in this State shall be deemed personal property, and be subject to levy and sale by execution,” — and by sec. 3035, “ the Officer making the levy shall, at the time of such levy, or *703 •as soon thereafter as practicable, notify the Secretary or other officer intrusted with the books of the turnpike or railroad company, of the fact of such levy; the notice to be given personally, or in writing left at the office of the Secretary, or other officer as aforesaid.”
It is observed that sec. 3034 is only a repetition of the provision of sec. 1487, so far as it relates to declaring turnpike and railroad stocks personal property and subject to levy and sale; but sec. 3035 defines to some extent the manner of making the levy, and indicates with sufficient clearness that nothing like manucaption is necessary to constitute a good levy: it authorizes the Officer to notify the Secretary of the. corporation after the levy has been made.
These several provisions of the Code refer to the same subject matter and are to be construed together; and when so viewed, it is impossible that there can be any doubt as to the intention of the Legislature. It is clear that they intended to make stocks in all private corporations liable by execution as all personal property is liable, except that the levy may be made without actual seizure of the stocks, and when sold under execution they intended the title to pass to the purchaser as in the sale of other personal property; and to make the sale effectual for the enjoyment of the franchise, it is made the duty of the company to transfer the stocks so sold to the purchaser. Notice to the Secretary or other proper officer, at the time of the levy or soon afterwards, is substituted in place of actual seizure.
*704 The levy and sale under an execution, so made, necessarily carry the title to stocks levied on and sold in the same way that they carry the title of any other personal property, — relating back to the teste of the execution as against subsequent assignments and rendering them void. It follows that, under the facts as stated in the answer of Tyler, the Secretary, Pike had a valid title to the stock, and that Toof, Philips & Co. received no title by their assignment as against Pike. It follows also, that Tyler’s excuse for refusing to transfer the stock is not tenable,, if the case is such as made the remedy by 'mandamus proper.
Angell & Ames, in treating of (he writ of mandamus, so far as it is applicable to civil corporations aggregate of a private nature, say, that “one of the modes in which courts exercise common law jurisdiction over civil corporations, for the purpose of compelling them to observe the ordinances of their constitutions, and to respect the rights of those entitled to participate in their privileges, is, by the writ of mandamus.” Ang. & Ames Corp., § 596.
To obtain this writ it is essential that the applicant show a specific and complete right which is to be enforced. Ib., § 709. And there must be no other specific remedy adequate to enforce the right. Ib., §. 710. The remedy that will exclude the 'writ of mandamus must not only afford adequate, but specific, or what in the case is equivalent to specific, relief. Ib., § 712.
We havé only to apply - these 'familiar doctrines to the question, now under consideration. .‘Pike shows by *705 his judgment, execution, levy, and sale, that he has a specific and complete right to the stock of Keating in the Publishing Company. In such case the Statute declares that the Company shall make the proper entries in its stock or transfer book, to enable him to exercise his rights as a stockholder under the charter. He applied to the Secretary for the proper entries and was refused. The question is, Is there any other remedy which will afford him adequate and specific relief? He might have an adequate remedy for the recovery of damages: hut his right is to be admitted into the Corporation as a stockholder, and to participate in the exercise of its franchises. He is entitled to this specific relief; and to enable him to obtain this specific relief, the law makes it the duty of the Corporation to admit him by making the proper entries on its stock book. It is obvious that he can have the specific relief which he seeks, by no other remedy than that afforded by the writ of mandamus.
It is observed that the Statute gives to the Corporation no discretion as to making the proper entries in its stock book for the transfer of stock sold under execution. It is a plain ministerial duty that is imposed, but in cases where other parties claim an interest in the subject matter of the proceeding, the Statute makes it the duty of the defendant in the writ to notify such third party, and thereupon such third party has the right to come in and litigate the matters in controversy. Code, sec. 3571. In this case the defendant in the answer tendered, set forth the claim of Toof, Philips & Co. to the stock, but as far as *706 we know they made no application to answer and assert their claim. In deciding the sufficiency of the answer of the defendant, therefore, the Court could only look to the case made in the answer; assuming that to be true, and so looking at it, we see no error in holding it to be insufficient, so far as the assignment to Toof, Phillips & Co. was relied on as a defense.
The next reason assigned in the answer for refusing to transfer the stock to Pike was, that “ the said Pike, after the said pretended sale, received from Keating, through the Sheriff, the entire amount of said execution, including the price for which he bought said stock — the one dollar — and accepted in that, entire •discharge of the whole execution by this payment, which they, Toof, Philips & Co. and J, M. Keating, contend is and was a release in law of all rights acquired under the pretended sale." In determining the question whether the answer was sufficient or not, it must be assumed that the facts stated were true. We are to determine whether the receipt by Pike of-the entire amount of the execution, on which the stock was sold and’ purchased, including the amount bid at the sale, operated in law as a release of the title which he had . acquired by his purchase? The fact. of his receiving the residue of the amount due on the execution, after deducting the amount produced by the sale, could not affect the title which he had acquired. But when, in addition to this, he received back the price he had paid for the stock, we are of opinion that it was prima facie an abandonment of *707 his purchase and an estoppel against a subsequent assertion of his title. The law is, that “in order to constitute a waiver, there must be a clear, unequivocal and decisive act of the party." Breedlove v. Stamp, 3 Yer., 276. It is difficult to understand why Keat-ing would not only pay the balance due on the execution, but also the amount bid on the stock by Pike, if he did not understand that Pike was t abandoning his purchase by accepting the money. It is equally difficult to comprehend the conduct of Pike in receiving back the money bid by him, unless he thereby meant Keating to understand that he abandoned his claim to the stock. But Keating and Toof, Philips & Co. were interested in this question, as well as Pike, and the answer should have been received, that the issue tbms raised might be determined upon all the facts.
We are therefore of opinion that the Court erred in not setting aside the judgment by default, and in not receiving the answer of the defendants tendered.
For these errors the judgment will be reversed and the cause remanded for • further proceedings.