IN THE MATTER OF THE PETITION OF ALBERT S. SIMRAK, A STOCKHOLDER OF THE DOUBLE O MINING COMPANY, A NEVADA CORPORATION, FOR ELECTION OF DIRECTORS.

DOUBLE O MINING COMPANY, APPELLANT, v. ALBERT S. SIMRAK, RESPONDENT.

No. 3375

December 30, 1942.                    132 P.(2d) 605.

*H. R. Cooke,* of Reno, for Appellant.

*Painter, Withers & Edwards,* of Reno, and *Harold E. Haven,* of San Francisco, Calif., for Respondent.

## OPINION

By the Court, ORR, J.:

Albert S. Simrak, a stockholder in the Double O Mining Company, a Nevada corporation, on behalf of himself and others similarly situated, filed a petition in the Second judicial district court, in and for the county of Washoe, under the provisions of section 1634, Nevada Compiled Laws, praying said court to appoint a board of directors for the said Double O Mining Company, alleging that the said Double O Mining Company had failed and neglected to elect directors within six months after the time designated for its annual meeting. The Double O Mining Company answered said petition, denying the right of said stockholders to any relief under said section.

Several questions are presented. The important one is: Were the petitioning stockholders, at the time of filing the petition, "stockholders holding stock entitling them to exercise at least a majority of the voting power," as provided in said section 1634 N. C. L.? This question presents for determination whether or not the claim of ownership by Simrak to 456,572 shares, alleged to have been purchased by him at sheriff's sale, is valid.

Simrak instituted an action against one O. O. Emmons, a stockholder of record in said Double O Mining Company, and caused to be attached 456,572 shares of the capital stock of said company standing on the records of said Double O Mining Company in the name of Emmons. Later judgment was rendered in Simrak's favor, and execution issued. The said shares of stock were sold at sheriff's sale, purchased by Simrak, and the sheriff issued a certificate of sale and delivered the same to the said purchaser.

In order for the petition to be sufficient, legal title to the 456,572 shares in question must be held by Simrak.

At the time the writ of attachment against said shares was levied, a return was made by the said Double O Mining Company, wherein it was stated, on information and belief, that the said shares of stock standing in the name of Emmons on the records of the company had been sold by said Emmons prior to the levy of the attachment.

Appellant insists that before the legal title to the stock purchased by respondent at the execution sale could pass so that said 456,572 shares could be counted in determining whether "stockholders holding stock entitling them to exercise at least a majority of the voting power" had petitioned the court, there must be an entry of the transfer upon the books of the corporation. It is conceded no such entry appears. Appellant rests its case, insofar as this question is concerned, squarely upon the provision made in the last two lines of section 1617 N. C. L., which read: "No transfer of stock shall be valid against the corporation until it shall have been registered upon the books of the corporation." A transfer of stock between individuals, in order to receive recognition by the corporation, must be registered upon its books; however, if not so registered, the transfer is binding upon the parties, and the equitable title, at least, passes. Further, as between individuals, a registration upon the corporate books must be made in order that the transferee may be entitled to exercise voting power. In re Argus Printing Co., 1 N. D. 434, 48 N. W. 347, 12 L. R. A. 781, 26 Am. St. Rep. 639, 647; Merchants National Bank v. Wehrmann, 202 U. S. 295, 26 S. Ct. 613, 50 L. Ed. 1036, 1040; 6 Fletcher, Corp., 6339, sec. 3796 and n. 19.

We do not believe such to be the case in the event of a judicial sale. Primarily, the enactment of section 1617 N. C. L. was to provide protection to the officers of a corporation in determining the ownership of or right to vote shares of stock. It readily appears

that under certain circumstances corporation officials would be confronted with conflicting claims of ownership and the right to vote shares of stock, and thus long delays or periods of uncertainty result. So the law has wisely provided, since a nonjudicial body such as the officers of a corporation are not equipped with the power to make a judicial determination of conflicting claims, that they have a right to rely upon the records in finding who has the right to vote stock. But in providing that safeguard and rule of procedure for the officers of a corporation, it does not necessarily follow that the legislature intended to thereby abridge, restrict, or interfere with the proper functioning of courts which are equipped with the necessary power, machinery, and instrumentalities to make determinations as to ownership from proper evidence presented. This is as it should be, because if courts were not permitted to proceed in the usual manner and go behind stock registration to determine the ownership, the officers of a corporation would be in a position, through willful neglect of duty or other ulterior motives, to deny real owners the right to vote their stock. That is why it may be said that insofar as ownership is concerned, as to the officers of a corporation the registration record is conclusive, but such is not the case with the courts. Lawrence v. Parlier Estate Co., 15 Cal. (2d) 220, 227, 100 P. (2d) 765; Italo Petroleum Corporation v. Producers Oil Corporation, 20 Del. Ch. 283, 174 A. 276, 278; Hall v. Woods, 325 Ill. 114, 156 N. E. 258, 259; Danbom v. Danbom, 132 Neb. 858, 273 N. W. 502; 18 C. J. S., Corporations, p. 1002, sec. 416.

These cases supra deal, in the most part, with mandamus proceedings, wherein action was taken against officers of corporations to compel a recognition of the true ownership. They are authority for the proposition that courts will not hesitate to disregard registration on corporate books in order to reach the real situation.

In the case of Lippitt v. American Wood Paper Co.,

14 R. I. 301, 302, certain stock was levied upon and sold at execution sale, and a sheriff's deed was given to the purchaser. The purchaser made a demand in writing on the treasurer of the corporation, stating that certain shares of stock in the corporation had been sold at execution sale, and to transfer the said stock upon the books of the corporation, which request was refused, and the suit was brought to enforce compliance. In discussing the matter, the court said:

"The case has been argued as if a transfer on the corporation books were necessary to perfect the complainant's title. We think this is a misapprehension. The statute expressly provides that, when shares of stock are sold on execution, the deed given by the officer making the sale 'shall vest in the purchaser all the right, title, and interest of the defendant in such shares.' * * * If, therefore, the sale was duly made and Morton C. Fisher was the legal owner of the shares sold, the complainant has succeeded to his title, and any transfer on the corporation books is superfluous."

Section 8843 N. C. L. provides that "shares * * * in any corporation * * * may be attached in execution, in like manner as upon writs of attachment."

And section 8853 N. C. L. provides: "The officer making the sale shall execute and deliver to the purchaser a certificate of sale and payment. Such certificate shall convey to the purchaser all right, title, and interest which the debtor had in and to such property on the day the execution was levied."

The effect of a sale under the Nevada statute is much the same as that under the Rhode Island statute, as a comparison of the wording of the Nevada and Rhode Island statutes discloses.

Further, the practice in some cases in the federal courts, where equity has intervened to supervise elections of certain corporations and where a master has been appointed to take charge of such elections, has been to expressly provide in the order appointing the

master that he, the said master, be not bound by the recitations of the records of the corporation as to ownership, but that evidence as to the existing facts be taken upon which to base a finding. 19 C. J. S., Corporations, sec. 720, p. 41, note 46. The cases cited under said note demonstrate the authority which courts of equity will exercise, and refuse to be bound by the entries on the books of the corporation if such entries are found to be at variance with the true facts. Court decrees and sales thereunder are given the effect of a complete transfer of title, and certificates of sale presented to a corporation entitles its officers to make appropriate entries on the books; but such entries are merely evidence of the change in ownership which the judgment and sale have theretofore accomplished. The certificate of sale received by Simrak is self-executing; the transfer to him of the legal title to said shares was passed by it, with the right to have a transfer on the books of the corporation made by the proper corporation officer. In fact, the proper officer of the corporation is, pro hac vice, a public officer charged with this duty, and he may be compelled to do so by mandamus. 18 C. J. S., Corporations, p. 1002, sec. 416; Memphis Appeal Publishing Co. v. Pike, 56 Tenn. 697, 9 Heisk. 697; Hair v. Burnell, C. C., 106 F. 280.

The uncertainties which may appear relative to the effect to be given that provision of section 1617 N. C. L., quoted supra, are more readily cleared away if we keep in mind the manifest difference its controlling effect has upon corporate officers and that had upon courts. In the first instance it is the officers of the corporation who determine where the voting power lies, and in so doing are bound by the express provisions of the statute. In the second instance the court is asked to make such a finding, and in so doing is bound only by the far-reaching and searching inquiry incident to equity practice. Such was the function of the district court in this case; its machinery being set in motion by the

filing of the petition and the answer of the defendant corporation, its inquiry was not confined to a mere inspection of the corporate books; it had a right to give effect to the solemn decree of a court of record and the process issued thereon, in determining the ownership of the stock in question and as to where the right to vote it rested. In the proceedings had on the petition asking for the appointment of directors, no question as to the validity of the sale under execution was raised, other than the introduction into evidence of the return made by the corporation, to the effect that it had information and belief that the stock standing in the name of Emmons on its books had been transferred prior to the levy of the attachment. Such an assertion could not be considered by the trial court as sufficient to nullify the attachment proceedings. Appellant suggests that to give effect to the holding that the entry upon the corporation books was not conclusive upon the courts would result, in a great measure, in destroying the desirability of incorporating under the Nevada law, because such a holding might result in harsh and unjust results and overthrow long and well-settled construction. We are unable to perceive wherein such a result would follow, because the holding in no way detracts from the settled law that insofar as the corporation is concerned the recitations upon the books of the corporation are conclusive, as is intended by the statute, and the decision goes no further than to follow the established law that the recitations in the register of the corporation are not and should not be conclusive upon the courts. We think shareholders of corporations incorporated under the laws of Nevada may well feel secure in the knowledge that claims of ownership of stock and the right to exercise the voting power thereof, submitted to a court for determination, will not receive its sanction unless the careful scrutiny and consideration of the court discloses such claims to be legal and just.

■ Appellant argues that inasmuch as section 1634 N. C. L. provides that a district court has jurisdiction

in equity to appoint directors in the event of a failure to hold an annual meeting, then the procedure to be followed should be according to equitable rules; that since there is no allegation or showing that the petitioners, having a strong majority of the total voting power, were, for any reason, unable to secure an annual meeting of the stockholders or secure a call of a special meeting by request to the board of directors or other officer designated by the bylaws to call such meeting, the petitioners are in no position to invoke the aid of a court of equity; that without such an allegation the complaint fails to state a cause of action; further, stockholders holding a majority of the voting power could control a corporation and force action by mandamus in the event the officers refused to act. This contention cannot be sustained, for the reason that the statute contains no such requirement, and to so construe it would necessitate reading into the statute such a provision.

■ Appellant further contends there is no showing that the predecessors in ownership of the stock whose holders are asking the court to name directors (which said predecessors were owners of said stock at the time the annual meeting should have been held) did not acquiesce in the failure to hold the annual meeting, and therefore the present owners are estopped from resorting to the courts for help. If it were a fact that the owners of the stock at the time the meeting should have been held did not object, that fact would not preclude their successors in interest for all time from having a board of directors appointed and from seeking the aid of legal methods provided for that purpose. After the expiration of six months a new right accrued, which could not be waived in advance by parties now strangers to the corporation.

Whether or not Simrak purchased the 456,572 shares of stock in question here with knowledge that the certificates therefor might be in the hands of unknown parties cannot affect these proceedings, because it is not

contended that unknown parties have the right to vote the shares of stock standing on the records in the name of O. O. Emmons.

Judgment and order affirmed.