ALFRED KUHN, Appellant, v. ELSIE M. ZEPP and FRED W. ZEPP.—No. 39852.—196 S. W. (2d) 249.

Court en Banc, July 8, 1946.

Rehearing Denied, September 9, 1946.

*Fred E. Maetten* and *Roy M. Hardy* for appellant.

*Louis Shifrin* and *David R. Hensley* for respondents; *Taylor, Mayer & Shifrin* of counsel.

ELLISON, J.—Judging from the petition, this case may be an action to define and adjudicate title to real estate under Sec. 1684,[1]

---

[1] References to our statutes are to R. S. 1939, and Mo. R. S. A. same section number, unless otherwise indicated.

or it may be a suit in equity to establish an implied trust[2] in the land, for the petition alleges a conveyance on a trust and prays an accounting of rents and profits. The answer in the main is a general denial coupled with affirmative pleas of ownership, estoppel and laches. At any rate the suit was tried to the court without a jury, and under Sec. 114(d) of the Civil Code,[3] is to be treated as of an equitable nature, calling for an appellate review upon both the law and the evidence. It clearly involves the title to real estate, and appellate jurisdiction is in this court under Sec. 3, Art. V, Const. 1945.

The plaintiff-appellant, Alfred Kuhn, is the father of the defendant-respondent Elsie M. Zepp and, of course, the father-in-law of her husband, the defendant-respondent Fred W. Zepp. Appellant was a married man. On October 19, 1933, while ▬▬▬ living in St. Louis he owned a residence property in that city described as Lot 11 in City Block 4979, and known as 7052 Tholozan Avenue, subject to a judgment lien in favor of a bank and some delinquent taxes. On that date he deeded the lot to his daughter, the respondent Elsie M. Zepp, by warranty deed. We are unable to find the deed in the transcript and there is no affirmative showing that his wife joined in it. But we assume she did, for these reasons.

It is admitted that appellant was having trouble with his wife and that she refused to join in the execution of a deed of trust on the property whereby he could borrow $2000 to pay off the judgment lien against it and alimony to her. The conveyance to the respondent daughter was made to put the title in such shape that the two respondents could obtain the real estate loan for these purposes. And it further appears that the appellant and his wife were later divorced and she was paid $500 as alimony in gross out of the proceeds of the loan. The judgment lien also was paid off, the total outlay for both being $1813.28. Further, some of the $2000 was used to pay past due water and gas bills, and the rest was consumed by appellant for living expenses.

It is further conceded the respondent daughter agreed to remit $15.00 per month to appellant out of the net income of the property, and that respondents would handle and try to sell the property and account to appellant for the income thereof. And they did account to him until June, 1936. Respondents contend that appellant sold the property to the respondent F. W. Zepp at that time, but executed no deed because the title already stood in the name of the respondent Elsie Zepp, for whom the purchase really was made. Respondents further assert that after they paid the purchase price appellant made no claim to the property for eight years until he brought this suit on June 28, 1944. In the meantime they had put a new loan for $2500

---

[2]65 C. J., p. 221, sec. 12; 54 Am. Jur., p. 23, sec. 5.
[3]Laws Mo. 1943, pp. 353, 388; Mo. R. S. A., sec. 847.114(d).

on it and improved it considerably. Respondent F. W. Zepp estimated its market value in 1944 at $5000.

After the divorce, or at least after the new $2000 deed of trust was made, appellant moved to California where he has since lived. Upon the filing of the suit each side served written interrogatories upon the other and the appellant made a request for an admission of the genuineness of 27 written exhibits, this under Sec's 85 and 88 of the Code.[4] These exhibits were letters written by one or another of the two respondents, and statements of account rendered by the respondent F. W. Zepp. Such of them as cover the period before respondents' alleged purchase of the property in June, 1936, are immaterial to the issue because respondents concede they were holding the title in trust for appellant prior to that. And some of the letter exhibits from the respondent daughter are undated and cannot be placed in chronological order. However, these do not throw light on the issues, except that one of them, which would have been written in the spring of 1936 judging from its exhibit number, told appellant her husband was trying to sell the property but believed he (appellant) would get more by holding it than selling it. In an earlier letter dated Sept. 20, 1935, she told her father all it would bring was $3500.

The statements of account rendered to the appellant by the respondent F. W. Zepp covered a period from August 1, 1935, to May 19, 1936, about a month before the alleged sale. He wrote four letters after the sale, all of which were introduced in evidence by appellant. The first was dated September 26 (no year) and written in longhand on a letterhead of W. A. Rust & Sons Realty Co. where Zepp was employed. The text of this letter was as follows: "Enclosed find check for $115.00 on the property at 7052 Tholozan Ave That is all I could spare at this time If however you must have that other $100. —I have asked your son Fred to advance what he can until I am able to make final payment on same about 60 days. Wishing you all the success possible in your new business I am . . ."

The next was a similar undated longhand letter, written by Mr. Zepp on one of his own blank statement sheets as follows: "Received your letter of the 27th inst And ▇▇▇ was some what surprised at your request as I did not agree to pay the balance at any specified time. However since you are planning to use this money I will make a special effort to get same for you will send a check from here on Sept 29th if not for full amt for as much as I can spare. Am very sorry I missed you in L. A. as we had a wonderful time and a very pleasant trip. Hoping you are well and enjoying yourself I am . . ."

---

[4] Laws Mo. 1943, pp. 353, 379, 380; Mo. R. S. A., secs. 847.85 and 847.88.

The next letter was the same as to writing, stationery and the total lack of date. The text of this one read as follows: "Enclosed find check for $100.00 the final payment on the property 7052 Tholozan Ave. I have to have the place painted and repaired again. Here you are on a ranch I surely hope you will have success and contentment and enjoy your work. Well Fred nothing new here All well and getting along o k. Hoping you will be successful I am . . ."

The $100 check mentioned in the above letter was a treasurer's check issued by the Cass Bank & Trust Company in St. Louis on March 5, 1937. It was payable to the order of the respondent Elsie M. Zepp, and by her specially indorsed "pay to the order of Alfred Kuhn as final payment on property known as 7052 Tholozan Ave., St. Louis, Mo." (signed) Elsie M. Zepp. Next below that appeared the signature of the appellant, "Alfred Kuhn." The bank stamps on the back showed the check was cashed by the Union Bank and Trust Co. of Los Angeles on March 18, 1937, and by the issuing bank on March 30, 1937.

The last of the four letters was dated June 8, 1937, and signed by both respondents. The date and place of writing the letter (St. Louis) and the name and address of the addressee (appellant) were written in longhand in ink. The body of the letter was typewritten. The text of the letter was as follows: "Your letter of the 4th instant received, and was very much surprised at your attitude in the letter. You know very well that you have no interest in that property, as I bought and paid you for same. My advice to you is to stay there and make the best of things, as it is the same all over the country. Yours respectfully . . ." The foregoing letter of respondents shows they had received some complaining letter from the appellant dated June 4, in which, apparently, he had claimed some interest in the property. But no such letter from appellant was ever introduced in evidence.

The only witness for the respondents was the respondent F. W. Zepp. He testified about managing the St. Louis property involved for appellant up to June, 1936. During that month, he said, he bought it from the appellant. He narrated that appellant came back from California and wanted to undertake to sell the property himself because he needed money. Zepp told him to go ahead and sell it, but after a few days effort appellant found he couldn't do it. Thereupon Zepp offered to purchase the equity in the property from him for $1000. The $1000 was to be paid by the cancellation of a $500 note the appellant owed Zepp, and Zepp was to pay the other $500 in money. The liens against the property were the $2000 deed of trust which had been negotiated in 1933, as stated at the beginning of this opinion, plus $33.67 interest and $195.49 taxes, and $50 realtor's commission, all aggregating $2280.16. This made the value of the property, clear of liens, $3280.16.

Zepp said he made that arrangement with appellant at his home in the kitchen in the presence of his wife, the respondent Elsie M. Zepp. He stated he paid the $500 cash by giving appellant a cashier's check for $250.00, and some money out of his pocket, and by paying on appellant's authorization a small bill for appellant's daughter Ginnie (Virginia Kuhn), who had been sick. In substantiation of that testimony respondents introduced a kind of postscript on the bottom of a family letter appellant had written both respondents from Los Angeles, dated February 2, 1937. The postscript says: "Dear Fred, I received from you July, 1936, the 14, check $250.00, check $115.00, by cash $20.00. Elsie paid Ginnie $12.00/$397.00. Fred, please sent the balance to make the $500.00 as soon as possible. Everything is so high and profits is too small out here the all chissler." With love, Papa. 4158 Raymond Avenue, Los Angeles, Cal."

In further substantiation of his testimony Zepp introduced in evidence a receipted statement of his employer, M. A. Rust & Sons Realty Co., dated July 25, 1936, showing a new deed of trust for $2500 had been put on the property, out of which the old deed of trust and other liens had been discharged, and the expenses of sale had been paid, leaving a cash credit due him of $157.04, the settlement being made and the statement receipted on August 7, 1936.

The $115 mentioned in the postscript above must be the $115 sent to appellant in Zepp's letter of September 26, supra. And the final payment of $100 by treasurer's check on March 5, 1937, must have been in response to the postscript. But it only made a total payment of $497.00—$3.00 short of the $500.00 cash he was to have paid. However, there never was any complaint about this small shortage until the trial. On cross-examination Zepp said the shortage of $3.00 was based on the figures in appellant's postscript of February 2, 1937; and that he (Zepp) couldn't remember anything more about the small cash difference than that the final payment of $100 by the treasurer's check for $100 of March 5, 1937, was supposed to be in full.

Appellant's counsel produced a letter dated August 10, 1937, addressed to both respondents and signed by the appellant Alfred Kuhn, Sr. and by Pauline Kuhn and Alfred J. Kuhn. Zepp said he never received it and it was not introduced at that time. But on rebuttal appellant took the stand. He said the Pauline Kuhn who signed the letter of August 10 was his sister, and that Alfred J. Kuhn was his eldest son, whom he called Joseph—his middle name. He stated he had his landlady's daughter, who worked in a bank, write the letter for him after he had told her the "sum and history" of his transactions with respondents. The letter was admitted in evidence, except the paragraph marked X, which the court excluded. The letter was as follows:

"I received your letter and was very much surprised to see that you made such a mistake as to state that I have no interest in my own property; also that you have bought and paid for same.

"When I turned this property over to Elsie it was understood that I could sell it at anytime I so desired.

"All the statements and letters I received from you both were always marked 'paid' on my property at 7052 Tholosen Ave., St. Louis. It was also understood that you, Fred Zepp, had no interest at all in this property.

(X) "Last year when you both were out here on your vacation several people heard you make the remark, 'If Pop wants to pay me $1,500.00 he can have his d—n property.' 'Bee and Esther heard you make this statement. Perhaps you can explain what you meant by such a statement.

"I have several bills that have to be paid as soon as possible. They are $50.00 for doctor bill, $25.00 for double rupture band, $30.00 for one upper plate, room and board $50.00 and I borrowed $5.00 from Gil before he left for St. Louis.

"Let me know if you want to send me the money. If not, I will come to St. Louis and sell my property."

Appellant admitted he was in St. Louis about two months in the summer of 1936, but said he returned to California in time for his birthday, July 14. Then he said he *came to* St. Louis in July. He declared he never had any conversation with his son-in-law F. W. Zepp about selling the property, and never owed him a $500 note. With reference to the $100 treasurer's check restrictively endorsed to him as the final payment on the property, he said the envelope containing it was mistakenly delivered by the Post Office to his son Alfred J. Kuhn and the latter brought it to him and told him it was a check for $100. At the time his eyesight was troubling him, and he had a friend lead him to the bank, where a lady told him how to sign it. No one read the check to him.

On cross-examination he told a conflicting story. He said he went to his son's house, not the son to his; and the son handed him the unopened envelope containing the check without knowing what was in it. He thought his sister Pauline ▮▮▮▮ took him to the son's house. He didn't open the envelope until he got back home, and he guessed the sister Pauline did that for him and found there was a check inside. Then he said he didn't know there was a check in the envelope until he got to the bank. After he got there he opened the envelope and she told him how to sign. There was no letter in the envelope with the check. He said he never did receive the letter (already introduced in evidence) which accompanied the check.

When asked why he accepted the $100 check in those circumstances, he answered that when he came to St. Louis in the summer of 1936 he just wanted to get $500, because he was not getting any rent payments and he thought he might as well take the $500 and pay it back later. He wanted to go in business with his son Joseph. He thought the $500 would be gradually paid back from the rents, and that Zepp

owed him that much. He denied writing the letter of February 2, 1937, where he acknowledged receipt of $250 and $115 and $20, and denied receiving the money. Then he admitted writing the letter, and said he brought the $250 with him when he returned to California from Missouri. But he couldn't remember getting the $115. And he denied receiving the letter accompanying the $100 check.

Counsel for appellant were forced to concede the futility of further examination of the appellant and the confusion and contradictions in his testimony. They even suggested that "on account of his age" the court would be justified in rigidly restricting the cross-examination. We regard his testimony as practically valueless. He was 77 years old at the time of the trial in April, 1945; but only 68 years old when he made the alleged sale of the real estate to the respondents nearly nine years earlier, in June, 1936. And although he joined his sister Pauline and son Alfred Joseph in writing the letter of August 10, 1937, denying a sale had been made to respondents, yet nothing further was ever done about it until 1944, when, as is common knowledge, the value of city real estate had risen substantially. We think respondents' side of the case is well supported by the documentary evidence and that the trial court ruled correctly in a general finding and judgment for them.

Appellant stresses Stephenson v. Stephenson, 351 Mo. 8, 171 S. W. (2d) 565, where a cestui que trust conveyed land to a relative who was to handle it for her benefit and sell it to her advantage; but who, instead transferred the land to his own son for a nominal consideration. The decision states good law, but it differs from this case in its facts. Here the respondent trustees did not betray the appellant and make way with the land. On the contrary they dealt directly with him and bought it from him after he had gone on the ground and tried to sell it himself. While such transactions are scrutinized closely by the courts, there is nothing to prevent a trustee from purchasing trust property from a beneficiary, if he can show the transaction was open, fair and above board, and that the beneficiary was sui juris, informed and consented, the burden being on the trustee to establish these facts. 1 Scott, Treatise on Trusts, p. 859, Sec. 170.1, p. 862, Sec. 170.2; Restatement "Trusts", Vol. 1, p. 441, Sec. 170(2); 54 Am. Jur. p. 363, Sec. 456, p. 367, Sec. 462; 65 C. J. p. 774, Sec. 645, p. 658, Sec. 522; Guy v. Mayes, 235 Mo. 390, 398, 138 S. W. 510, 512(2).

We think the respondents sustained that burden and that the finding and judgment of the trial court should be affirmed.

Judgment affirmed. All concur.