235 F.2d 612
 G. A. MILLER, W. W. Lord, Ralph Smeed, L. H. Staus and Jack Smeed, Trustees of John W. Smeed Estate, Appellants,
v.
Sam WAHYOU, Diamond-S Ranch Co., Sam Wahyou, K. R. Nutting and Thomas G. Lee, as Trustees for the assets of Diamond-S Ranch Co., Thomas G. Lee, Toy Quong, Joe Sin, K. R. Nutting, Yip K. Toon and Herbert Jang, Appellees.
 No. 14902.
 United States Court of Appeals Ninth Circuit.
 June 8, 1956.
 Rehearing Denied July 16, 1956.
 
 Pike & McLaughlin, Reno, Nev., Carver, McClenahan & Greenfield, Boise, Idaho, Smith & Ewing, Caldwell, Idaho, for appellants.
 John S. Halley, Reno, Nev., for A. E. Corbari and Marie Corbari.
 John Davidson, Reno, Nev., Forrest E. Macomber, Stockton, Cal., for Diamond-S Ranch Co.
 Before DENMAN, Chief Judge, and STEPHENS and POPE, Circuit Judges.
 DENMAN, Chief Judge.
 
 
 1
 This is an appeal from a summary judgment rendered by the United States District Court for the District of Nevada, denying appellants, who allegedly own an undivided interest in the assets of the Diamond-S Ranch Co. corporation, equitable relief against that corporation and its directors.[1] Appellants urge that the District Court erred in not finding that they held such an interest in the assets and not ordering a distribution. Jurisdiction was based on diversity of citizenship, and the law of Nevada is applicable.
 
 
 2
 The Diamond-S Ranch Co. was incorporated in 1945. Corbari and Wahyou were both stockholders and directors. In 1947, Corbari executed a note which was assigned to the Bank of America in Stockton, California. In 1949, Corbari pledged his stock to secure this indebtedness. He executed a renewal note secured by his pledge agreement on July 10, 1950.
 
 
 3
 The Diamond-S Ranch Co. was dissolved on September 7, 1950. Section 1665 of the Nevada Compiled Laws provides in part that "[u]pon the dissolution of any corporation * * * the directors shall be trustees thereof. * * *." [Emphasis added.]
 
 
 4
 Corbari executed a second pledge of his stock to the bank in Stockton, California, on September 18, 1950. On October 17, 1950, the Bank assigned Corbari's note with the security of the pledge of the Diamond-S Ranch stock to Wahyou, Corbari's fellow shareholder and director.
 
 
 5
 On October 31, 1950, Corbari, who was indebted to appellants' testator during his lifetime, assigned to appellants
 
 
 6
 "all my right, title and interest in and to all of my partnership interest in the assets of a certain partnership formed by reason of the dissolution of Diamond-S Ranch Co., a Nevada corporation, and in and to any profits arising from the operation of said partnership * * *."
 
 
 7
 At a pledgee's sale held on May 21, 1951, Wahyou, the director of the dissolved corporation, purchased Corbari's stock at public auction. On October 10, 1951, an agent was appointed to revive the Diamond-S Ranch Co. Section 1692 of the Nevada Compiled Laws, 1931-1941, requires the consent of "all the stockholders" for such a revival. Wahyou gave the consent for the interest formerly held by Corbari. The corporation was revived on December 7, 1951.
 
 
 8
 Appellants contend that Wahyou was a trustee of the dissolved corporation when he purchased Corbari's stock and consequently the transaction was void. They contend that the purported revival of the Diamond-S Ranch Co. was ineffective since they, as the proper successors to Corbari's interest, did not consent to it as required by statute. They asked (1) for a decree that they own Corbari's interest in the corporate assets, (2) to have the assets impressed with a lien to secure their claim, (3) the removal of the present directors and the appointment of a receiver, (4) an accounting by the directors, (5) an injunction to prevent the disposal of the property by the present directors, (6) a personal judgment against the directors for Corbari's interest in the assets, and (7) the sale of the corporate assets and the distribution of the proceeds.
 
 
 9
 Little time need be spent with either of appellees' two contentions to support the judgment, neither of which was relied on by the District Court. Appellees first argue that the revival of the corporation related back to the dissolution wiping out Wahyou's obligations as a trustee. Section 1692 of the Nevada Compiled Laws, 1931-1941, provides that the revival may date back to the date of dissolution. From this appellees assert that the situation "is exactly the same as if no certificate of dissolution had ever been filed." Such an assumption is unwarranted. The Nevada Legislature did not intend that directors upon whom it placed the obligations of a trustee during dissolution would be able to avoid the consequences of breaches of trust in acquiring stock merely by voting that stock to revive the corporation. Moreover, appellees' contention assumes that there had been a valid revival of the Diamond-S Ranch Co. If Wahyou's purchase of Corbari's shares could be set aside as a breach of trust, then not "all the stockholders" gave their consent to revival as is required by Section 1692 of the Nevada Compiled Laws, 1931-1941.
 
 
 10
 Appellees next assert that appellants failed to obtain Corbari's interest in the corporation since (a) his shares were pledged at the time of the assignment to them, and (b) even if Corbari retained an interest, the Uniform Stock Transfer Act, Nevada Compiled Laws, 1943-1949, §§ 1854-1854.23, requires the delivery of the stock certificates to pass title, and those certificates were pledged to Wahyou and therefore in his possession at the time of the assignment from Corbari to appellants.
 
 
 11
 There is no merit in the contention that Corbari did not have an interest in the pledged shares to assign to appellants. The pledge was made in California as was the sale where Wahyou purchased the stock. Under California law, which would be applied by a Nevada court to this part of the transaction, Corbari retained full title to the stock subject to the pledgee's lien and power of sale. Calif.Civil Code, §§ 2888, 2986, 3000; Lawrence v. I. N. Parlier Estate Co., 1940, 15 Cal.2d 220, 100 P.2d 765; Horn v. Klatt, 1944, 65 Cal.App.2d 510, 151 P.2d 149.
 
 
 12
 Even assuming that the Uniform Stock Transfer Act applies to dissolved corporations, the fact that Corbari had pledged his shares does not mean that he could not transfer to appellants sufficient interest to enable them to challenge breaches of trust duties by directors. Section 10 of that Act, Nevada Compiled Laws, 1943-1949, § 1854.09, provides:[2]
 
 
 13
 "An attempted transfer of title to a certificate or the shares represented thereby without delivery of the certificate shall have the effect of a promise to transfer and the obligation, if any, imposed by such promise shall be determined by the law governing the formation and performance of contracts." [Emphasis added.]
 
 
 14
 Several courts in states which have enacted the Uniform Stock Transfer Act have said that an assignment of a shareholder's interest without delivery of the certificates operates to vest an equitable title in the assignee. See Parsons v. Lipe, 1933, 158 Misc. 32, 286 N.Y.S. 60, affirmed Parsons v. First Trust & Deposit Co., 269 N.Y. 630, 200 N.E. 31; Whitney v. Nolan, 1937, 296 Mass. 419, 6 N.E.2d 386; Johnson v. Johnson, 1938, 300 Mass. 24, 13 N.E.2d 788.
 
 
 15
 We think the Nevada courts would follow these cases and hold that appellants had a sufficient property interest to challenge a director's breach of trust in acquiring the stock certificates to which they had been assigned the pledgee's interest. This is a Uniform Act and construction in other states have weight. In two Nevada cases equitable title was recognized in an assignee of stock where ownership had not been transferred on the books of the corporation. Cf. Petition of Simrak, 1942, 61 Nev. 431, 132 P.2d 605; Bercich v. Marye, 1874, 9 Nev. 312. Reaching a contrary result would completely destroy the value of the assignment which should place appellants in as good a position as Corbari.
 
 
 16
 The appellants' attack on the decision of the District Court stands on but slightly better ground than the appellees' attempts to support it. Appellants rely on the rule which forbids a trustee to purchase part of the subject matter of the trust from himself or a third person at a foreclosure sale[3]: Here Wahyou purchased not an asset of the dissolved corporation but Corbari's interest in those assets. Under the general law of trust,[4] a trustee may purchase his beneficiary's interest in the trust.[5] The Nevada Legislature undoubtedly intended that such a rule apply to the director of a dissolved corporation.[6]
 
 
 17
 Corbari's interest was not part of the trust over which Wahyou was a trustee. The Nevada Legislature imposed the duties of a trustee upon the directors of a dissolved corporation with regard to their powers to liquidate the corporate assets, pay creditors and distribute the net proceeds to the shareholders.[7] The Nevada statutes make no mention of any powers over a shareholder's interest, and it seems clear the corporate liquidators have no control over how a particular shareholder deals with his interest.
 
 
 18
 The reasons why a trustee may not purchase trust property at a foreclosure sale are not applicable to what was done by Wahyou in this case. The high fiduciary duties of a trustee are imposed on a director of a dissolved corporation to prevent him from personally profiting rather than obtaining the highest prices in the liquidation of assets for all the shareholders. The corporation is in a vulnerable position during dissolution and liquidation. Undoubtedly it would be improper for a director-trustee to purchase the property of the corporation at a foreclosure sale without the consent of the shareholders. As an individual it would be in his interest to enter a low bid while as a trustee it would be in his interest to receive the highest bid possible. Also a director-trustee would be in a position to decide whether the corporation should redeem its pledge or whether it should be allowed to be sold upon foreclosure.
 
 
 19
 On the other hand, a trustee has no duty to buy one beneficiary's interest for the benefit of other beneficiaries:[8] Wahyou was in no position to decide whether Corbari's interest should be redeemed or sold. Whether Wahyou made a low or a high bid for Corbari's interest did not affect the dissolved corporation's financial position. Wahyou, as a result of the purchase, did not occupy a personal position adverse to his duties as a trustee. He was already both a shareholder-beneficiary and a director-trustee.
 
 
 20
 However, while a trustee may purchase his beneficiary's interest, under the general law of trusts the trustee must carry the burden of proving that the transaction whereby he acquired the beneficiary's interest was fair and involved no misuse of his office.[9] Because of the many opportunities to make use of information acquired as a director[10] there is good reason to carry this allocation of the burden of proof over to the Nevada corporate dissolution statute. Here the District Court placed the burden of proving fraud and misuse of Wahyou's fiduciary position on the appellants. Such an allocation of the burden of proof was erroneous. While there was evidence from which the District Court could have found that Wahyou had proved that the transaction whereby he acquired Corbari's stock was fair,[11] it made no such finding and such a question is not one for this Court to decide.
 
 
 21
 The judgment is reversed and the case remanded to the District Court for a finding as to whether Wahyou has sustained such a burden of proof on the basis of the evidence presently in the record or any additional evidence the parties may offer.
 
 
 
 Notes:
 
 
 [1]
 The parties presented pleadings, depositions, an affidavit, admissions, eighteen exhibits and a stipulation that they had no further evidence to offer, and each side moved for summary judgment. F.R. C.P. 56, 28 U.S.C.A
 
 
 [2]
 Since Calif.Corp.Code § 2473 is identical with Nevada Compiled Laws, 1943-1949, § 1854.09, it is unnecessary to consider which statute a Nevada Court would apply to determine the transferability of Corbari's interest if the case had been brought there rather than in a United States District Court under its diversity jurisdiction
 
 
 [3]
 See Scott on Trusts §§ 170.4, 170.5, 170.21
 
 
 [4]
 Apparently the Nevada courts have yet to pass upon this question. It is assumed that they would apply the general law of trusts
 
 
 [5]
 See Thompson v. Afro-American Co., 4 Cir., 1950, 185 F.2d 1014; Marcum v. Wallace, 1932, 246 Ky. 726, 56 S.W.2d 5; Kuhn v. Zepp, 1946, 355 Mo. 295, 196 S.W.2d 249; Baker v. Finnell, 1953, 208 Okl. 134, 253 P.2d 1064; American Bank & Trust Co. v. Lebanon Bank & Trust Co., 1945, 28 Tenn.App. 618, 192 S.W.2d 245
 
 
 [6]
 Such a result was reached in the only case discovered which involved the same factual situation as here. Bisbee v. Midland Linseed Products Co., 8 Cir., 19 F.2d 24, certiorari denied, 1927, 275 U. S. 564, 48 S.Ct. 121, 72 L.Ed. 428. For very similar cases where the trustee was permitted to purchase the shares of the beneficiary see, Thompson v. Afro-American Co., note 5 supra; Victor v. Hillebrecht, 1950, 405 Ill. 264, 90 N.E.2d 751, certiorari denied, 339 U.S. 980, 70 S.Ct. 1026, 94 L.Ed. 1384; Conrads v. Kasch, Tex.Civ.App.1930, 26 S.W.2d 732
 
 
 [7]
 Section 1665 of the Nevada Compiled Laws, 1929, provides: "Upon the dissolution of any corporation * * * the directors shall be trustees thereof, with full power to settle the affairs, collect the outstanding debts, sell, and convey the property, real and personal, and divide the moneys and other property among the stockholders, after paying or adequately providing for the payment of its liabilities and obligations * * *."
 
 
 [8]
 Victor v. Hillebrecht, note 6 supra
 
 
 [9]
 See, e. g., Thompson v. Afro-American Co., note 5 supra; McDonald v. Hewlett, 1951, 102 Cal.App.2d 680, 228 P.2d 83, 24 A.L.R.2d 1281
 
 
 [10]
 See discussion in Gratz v. Claughton, 2 Cir., 1951, 187 F.2d 46
 
 
 [11]
 But see, Comment, 3 Stanford L.Rev. 743 (1951)
 
 
 
 22
 POPE, Circuit Judge (concurring).
 
 
 23
 What persuades me to concur here is the fact that the cause is remanded for finding upon a stated issue on the basis not only of the present record, but of "any additional evidence the parties may offer." The odd circumstance here is that the judgment below was entered upon a motion for summary judgment. Yet our opinion remands for determination of a stated issue, which means, necessarily, that there is and was a "genuine issue as to any material fact". Since this genuine issue existed, the court was without authority to grant a summary judgment. Notwithstanding the existence of this genuine issue, there was no trial in the sense of Rule 43(a), 28 U.S. C.A. There was no testimony of witnesses "taken orally in open court". The depositions used in support of the motions for summary judgment were taken merely for discovery purposes. There was no direct or cross-examination in the ordinary sense, nor opportunity for the judge to determine the credibility of witnesses from his observation of them.
 
 
 24
 It is true that both parties moved for summary judgment, but this circumstance does not enlarge the right to a summary judgment. F.A.R. Liquidating Corp. v. Brownell, 3 Cir., 209 F.2d 375, 380. The trial court's opinion recites that when the motions were argued the parties stipulated that they had no further evidence to offer. But this stipulation, as stated, was only for the purpose of the pending motions. When appellants' motion was overruled, their stipulation was no longer effective. "We do not think that the concession continues over into the Court's separate consideration of appellee's motion for summary judgment in his behalf after appellants' motion was overruled." Begnaud v. White, 6 Cir., 170 F.2d 323, 327.
 
 
 25
 Appellants therefore had the right to argue, below and here, that they were entitled to a trial, in the sense of Rule 43(a), upon the issue which we now remand for hearing. They did not do so. My doubts as to whether notwithstanding this we ought to notice the error in granting the motion are resolved by my knowledge that upon remand the court will have an opportunity to resolve the issue upon something other than mere transcripts of depositions and other documents and records.